## Patrick Breen v. C. R. Morehead et al.

### No. 2551.   Decided April 26, 1911.

**1.—School Land—Forfeiture—Right to Attack.**

One standing in no contract relation to the State can not complain of the proceedings by which the latter declared the forfeiture of rights of a purchaser of school land nor attack the title of another to whom the State subsequently sold and patented it.   (P. 256.)

**2.—Record of Title—Notice—Estoppel—After-acquired Title.**

A purchaser of land is not required to examine the records for conveyances by his grantor prior to the time the title held by the latter originated, nor taxed with notice by the record of a prior deed which by estoppel might pass the title subsequently acquired by such grantor from the State.   (P. 257.)

**3.—Same—Case Stated.**

One holding school land by deed from a purchaser from the State, made conveyance thereof which was duly recorded, after which the title of the original purchaser was forfeited by the State for default in his annual payments; the grantee of the original purchaser, maker of such recorded conveyance, then brought the forfeited land from the State and obtained patent; holding this title he conveyed to another person. Held, that the latter was not taxed with notice of the recorded conveyance made prior to the origin of his grantor's title and was protected as an innocent purchaser against the effect of same in passing by estoppel such grantor's after-acquired title.   (Pp. 255-258.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from El Paso County.

Breen obtained writ of error on the affirmance, on his appeal, of an adverse judgment in a suit brought by Morehead against Coffin and others, in which he had intervened.

*Edwards & Edwards* and *Morris & Gillett,* for plaintiff in error.— On the invalidity of the repurchase while the old sale was in effect: Baker v. Torrey, 69 Texas, 7; Pohle v. Robertson, 102 Texas, 274; Zettlemeyer v. Shuler, 52 Texas Civ. App., 648; Willoughby v. Terrell, 99 Texas, 488; Angle v. Terrell, 97 Texas, 509; O'Keefe v. McPherson, 25 Texas Civ. App., 313; Smithers v. Lowrance, 100 Texas, 77; Bumpass v. McLendon, 45 Texas Civ. App., 519; Adams v. Terrell, 100 Texas, 331; Standifer v. Wilson, 93 Texas, 232; People v. Terrell, 97 Texas, 74.   As to application of payments on void sale to the valid existing claim of the person paying.   Scott v. Slaughter, 35 Texas Civ. App., 524; Thompson v. Lynn, 36 Texas Civ. App., 79.

The covenant of nonclaim of the premises conveyed by McKelligon to appellant, Breen, which covenant was expressed in said deed, operated to pass the after acquired title of M. J. McKelligon when the period of settlement was completed and operated to estop McKelligon and all persons claiming in privity with him from claiming said premises. Plummer v. Smith, 5 N. H., 553, 22 Am. Dec., 476; Balch v. Arnold, 59 Pac., 434; Peck v. Hensley, 20 Texas, 673; Garrett v. Christopher, 74 Texas, 453; Atler v. Erskine, 50 Texas Civ. App., 576.

*Patterson, Buckler & Woodson, Beall, Kemp & Ward* and *R. V. Bowen,* for defendants in error.—There are many cases in our courts

holding that deeds similar in all respects to the deed from McKelligon to Breen were nothing more than quitclaim deeds. Harrison v. Boring, 44 Texas, 259; Threadgill v. Bigerstaff, 87 Texas, 521; Hunter v. Eastman, 95 Texas, 652; Richardson v. Levy, 67 Texas, 367; Taylor v. Harrison, 47 Texas, 454; Carlton v. Lombardi, 81 Texas, 357; Smith v. Pollard, 19 Vt., 272 (which is such a deed as the one we have here); Cummings v. Dearborn, 56 Vt., 441; Holbrook v. Debbo, 99 Ill., 372.

The covenant of nonclaim in the deed from McKelligon to Breen did not in any way change the character of the deed from a quitclaim to one for the sale of the land. Threadgill v. Bigerstaff, 87 Texas, 521; Bedford v. Cattle Co., 91 Texas, 646; Hunter v. Eastman, 95 Texas, 652; Woody v. Strong, 45 Texas Civ. App., 256; Culwell v. Barroum, 13 Texas Civ. App., 458; Lumber Co. v. Hancock, 76 Texas, 535.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

The subject of this controversy is section 270, containing 640 acres located in El Paso County and surveyed for the school fund by virtue of certificate issued to the Houston Tap & Brazoria Railroad Company. Marshall Rogers applied to purchase that section under the law of 1883, and, having complied with its terms, the land was awarded to him on November 23, 1883, at the price of $1,546.66 2/3. Rogers complied with the law and executed his obligation in accordance with the law.

On July 2, 1885, Rogers conveyed an undivided half interest in section 270 to John Julian and on the same day he conveyed the other half to M. J. McKelligon, both deeds being in the form of a quitclaim and both were recorded in El Paso County on the day of their date.

On the 21st day of October, 1885, for a valuable consideration, McKelligon executed and delivered the following instrument to Patrick Breen:

"The State of Texas,
El Paso County.

Know all men by these presents: That I, Maurice J. McKelligon, of the county of El Paso and State of Texas, for and in consideration of the sum of $2,000 to me in hand paid by Patrick Breen of the county of El Paso and State of Texas, the receipt of which is hereby acknowledged, do by these presents GRANT, BARGAIN, SELL, RELEASE, AND FOREVER QUITCLAIM unto the said Patrick Breen, his heirs and assigns all my right, title and interest in and to that tract or parcel of land lying in the county of El Paso and State of Texas, described as follows, to wit:

Being in the county of El Paso and being one-half undivided interest in 320 acres sold by Marshall Rogers on the 2d day of July, 1885, to Maurice J. McKelligon which said deed is duly recorded on the records of said El Paso County, and here referred to as description and being further described as 140 acres sold by the State of Texas through the surveyor of El Paso County, on the 23d day of November, A. D. 1883, as evidenced by certificate number 586 of section 270 of the lands of H. T. & B. R. Rd. Co., the same being the section of 640 acres sold on said date to Marshall Rogers for the benefit of the common schools of

Texas, said interest herein conveyed as above described being 160 acres as aforesaid.

TO HAVE AND TO HOLD the said premises together with all and singular the rights, privileges and appurtenances to the same in any manner belonging, unto the said Patrick Breen, his heirs and assigns, so that neither I, the said Maurice J. McKelligon, nor my heirs, nor any person or persons claiming under me shall at any time hereafter claim or demand any right or title to the aforesaid premises or appurtenances or any part thereof.

WITNESS MY HAND this 21st day of October, A. D. 1885.

M. J. McKelligon."

The interest and installment of principal due August 1st, 1885, and also that due on the 1st day of August, 1886, were not paid and the sale of the land was duly forfeited according to law then in force. On the 6th day of July, 1887, M. J. McKelligon filed his application to purchase the said section 270 under section 8 of the Act of 1887, complying in all respects with that law, and the land was awarded to him. On the 25th day of August, 1890, patent was issued to McKelligon for the land.

On July 24, 1890, McKelligon and wife released by quitclaim deed to Davis, Bell & Davis, 5/8 of the section, which instrument was duly recorded in El Paso County. Prior to January 3, 1893, the interest of Davis, Bell & Davis was conveyed to P. E. Kern.

By warranty deed of date January 6, 1893, in consideration of $10.00 paid, and for money before paid by Davis, Beall & Davis, John Julian, R. F. Johnson and P. E. Kern, said McKelligon and his wife transferred to P. E. Kern an undivided 400 acres out of the said survey 270 and the deed was filed for record in El Paso County and recorded on the 7th day of January, 1893. On January 6th, 1893, by a deed duly recorded on the 7th day of said month in El Paso County, McKelligon and wife, for a consideration of $4,500 paid, conveyed 150 acres undivided interest in the said survey to P. E. Kern by warranty deed recorded on the 7th day of January, 1893, and on the same day the said McKelligon and wife for a consideration of $1,500, by warranty deed, conveyed an undivided interest of 50 acres of the said land to P. E. Kern. On January 27, 1891, for a consideration of $200 paid, McKelligon and wife conveyed by warranty deed to Ella Agnes McKelligon 40 acres in the said survey which deed was recorded on the day of its date. It will be seen that McKelligon, for a valuable consideration, conveyed all of the land to the parties named.

Plaintiff in error insists that the forfeiture of the sale made by the State to Rogers was not lawfully forfeited, therefore, the patent which subsequently issued to McKelligon was void. It is not necessary for us to review the facts of that sale and the forfeiture thereof, because Breen was not in privity with the State, but his right depended wholly upon the action of Rogers in maintaining his right in the land by a compliance with the law then in force. The failure of Rogers to pay the interest upon the purchase price conferred authority upon the officer to declare the forfeiture of the contract, which he did in accordance with the terms of the law. Under the Act of 1887, McKelligon

being then living upon the land and claiming it as his own, had the right to purchase it from the State, which he did, paid the price to the State and patent was issued which vested title thereto in McKelligon. The forfeiture of the purchase by Rogers terminated the claim which Breen had in the land. The only claim which Breen can assert to the land in question is under the doctrine of estoppel against McKelligon, arising upon the terms of the deed made by McKelligon to him. If it were necessary to decide that question it would present some interesting points of law, but in the view that we take of it we will assume that the character of the deed from McKelligon to Breen was such that if McKelligon now owned the land it would work an estoppel in favor of Breen. Proceeding upon this basis the crucial question in this case is, was it necessary for the subsequent purchasers from Rogers, who each paid a valuable consideration and had no actual notice, to look beyond the title which McKelligon derived from the State by his purchase to ascertain if, previous to the acquisition of the title, he had conveyed the land to another.

Bearing in mind that the title to the land was in the State at the time that McKelligon made his application to buy, it necessarily follows that the title of McKelligon originated in the sale to him by the State on his application dated the 6th of July, 1887, which was about two years subsequent to the date of the deed made by him to Breen. This brings us to the question whether it was the duty of those who bought from McKelligon, without any notice of the deed to Breen for a valuable consideration paid, to look beyond the origin of McKelligon's title to ascertain the fact of previous sale to Breen. The rule of law which governs such transactions is stated thus by Mr. Tiffany in his work on Real Property, vol. 1, sec. 476, p. 1080: "A purchaser is not, as a general rule, charged with notice of a conveyance which is of record, even though made by a person in the chain of title, unless it was made by such person after the time at which the records show him to have obtained the title, that is, the purchaser is not bound to search the records to determine whether any particular person in the chain of title, previous to obtaining the title, had done any acts which would affect the title."

Mr. Pomeroy in his Equity Jurisprudence, vol. 2, sec. 658, p. 1133, states the same rule in this language: "How far back is a purchaser bound to search the record title of his own vendor? If the records show a good title vested in the vendor at a certain date, and nothing done by him after that time to impair or encumber the title, it would seem that the policy of the registry acts is thereby accomplished; the purchaser is protected; he is not bound to inquire farther back, and to ascertain whether the vendor has done acts which may impair his title prior to the time at which it was vested in him as indicated by the records."

Of the multitude of cases on this subject we cite the following which sustain the text of the two authors above cited: Calder v. Chapman, 52 Pa. St., 359; Farmers' L. & T. Co. v. Mallby, 8 Paige (N. Y.), 361; Bingham v. Kirkland, 34 N. J. Eq., 229.

The application of this rule of law to the present case can best be

made by a statement of the facts as they must have occurred at the time. When each of the purchasers from McKelligon sought to make the purchase it became the duty to see that there had been no previous sale or incumbrance placed upon the land. For illustration we will suppose that Mr. Kern, who became the principal owner of the land, in making his purchase, should have gone to the record there and found that the title of McKelligon originated in his purchase in 1887 and matured in a patent thereafter, he then examined the record from that time down to the date of his purchase and found no instrument of any character recorded whereby the title from McKelligon would be incumbered or impaired. Now let us suppose that Mr. Kern had undertaken to investigate the matter as to what might have transpired anterior to the sale by the State to McKelligon. If he must look beyond the origin of the title under which he was purchasing, then how far should he follow that record in the course of time in order to determine whether McKelligon had made a previous sale of that land? If required to go beyond the origin of the title, there could be no limit short of the vendor's life, and such requirement of purchasers would involve land titles in such uncertainty that it would be impracticable to rely upon any investigation.

We believe that the rule stated above, that the date when the title originated in McKelligon marked the limit of investigation for previous sales or incumbrances of that tract of land by McKelligon, should be applied here. It would be unreasonable to suppose that a man who had just received a title from the State had previously made a transfer of that land. That ordinary care and caution which the subsequent purchaser must exercise would not suggest an investigation for conveyances made before acquisition of title. It follows that the record of Breen's deed in El Paso County gave no notice to the subsequent purchasers from McKelligon who had no actual notice and paid a valuable consideration for the land.

There are many interesting questions ably discussed in this case by the learned judge who wrote the opinion, but since Breen had no title upon which to recover and had no right of estoppel as against the innocent purchasers, the judgment against him in favor of all the defendants was properly rendered and is therefore affirmed.

*Affirmed.*