**FIRST NAT. BANK OF CHICAGO et al. v. SOUTHWESTERN LUMBER CO. OF NEW JERSEY.**

No. 7353.

Circuit Court of Appeals, Fifth Circuit.

March 1, 1935.

David T. Searls, of Houston, Tex., and Bruce Johnstone and John W. Kearns, both of Chicago, Ill., for appellants.

Ballinger Mills, of Galveston, Tex., for appellee.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

In 1922 the Delta Land & Timber Company (herein called the Delta Company), being engaged in the lumber manufacturing business, and owning a sawmill, and timber land and standing timber, for the purpose of securing bonds issued by it, executed a mortgage or deed of trust which conveyed the various properties then owned by it, and contained an after-acquired property clause. Upon the execution of that instrument it was filed for record and recorded in the counties of San Jacinto, Walker, and Montgomery, in the state of Texas, as provided by Texas statutes relating to the filing and recording of mortgages, deeds of trust, etc., upon real estate. The Southwestern Lumber Company of New Jersey, a New Jersey corporation (herein referred to as the Southwestern Company), in and prior to 1925 was solely owned by the Atchison, Topeka & Santa Fé Railway Company (herein called the Santa Fé Company), which owned and operated lines of railway which served the locality of the timber properties of the Delta Company. On July 14, 1925, the Delta Company entered into a written contract with the Southwestern Company. That instrument contains recitals to the effect that the Delta Company desires to obtain certain tracts in the counties of San

Jacinto and Montgomery, Tex., containing standing timber (referred to in the contract as "timber block"), and desires the Southwestern Company to assist it by financing the acquisition of those timber tracts, and that the Southwestern Company is willing to render such financial assistance "in accordance with the terms and conditions hereinafter set forth." Following provisions whereby the Delta Company agreed to undertake to obtain options on properties included in the timber block, and, upon obtaining options on sufficient of such properties to warrant the acquisition of all or any part thereof, to submit to the Southwestern Company a statement as to the options so obtained and request the Southwestern Company to acquire, under the terms of the contract, properties included in such options, the contract provided: "When the Southwestern Company concurs in the purchase of any or all of such tracts of timber land and/or standing timber it agrees and will pay on account of the purchase price of said timber land and/or standing timber, which it shall so elect to purchase, an amount or amounts not to exceed Two Hundred Fifty Thousand Dollars ($250,000.00), said timber land and/or standing timber to be conveyed to the Southwestern Company. The Delta Company shall deliver to the Southwestern Company, abstracts of title, and/or other title papers, with full and complete information concerning any encumbrances, liens, unpaid assessments and taxes existing against said tracts of timber land and/or standing timber, together with a copy of timber cruise or cruises as provided in Article VI hereof. It is agreed by the parties hereto that in such event said purchase price shall include all preliminary expense, such as fees for timber cruising, abstracting costs, attorney's and recording fees, and any and all other incidental expense in connection with the purchase of said timber tracts and/or standing timber." The contract contained provisions as to the Delta Company having timber it proposed to request the Southwestern Company to purchase under the contract cruised and the amount thereof estimated by a named firm, as to amounts advanced by the Southwestern Company bearing interest, as to the Delta Company sawing timber acquired by it under the contract, and making payments to the Southwestern Company from time to time, as to the Delta Company within prescribed times paying to the Southwestern Company the balance owing on the amounts of such advances, with interest thereon, as

to the Delta Company, with the consent of the Southwestern Company, using money paid to the latter by the former in acquiring additional timber or timber lands, as to the Southwestern Company agreeing to assist the Delta Company in securing contracts for the use of a described tram railroad and a part of the main line of the Santa Fé Company, and as to the Southwestern Company conveying to the Delta Company the "timber block" purchased by the former upon the Delta Company paying the principal and interest of the amounts advanced to it and fully performing all its obligations under the contract. The contract contained the following: "The Southwestern Company enters into this contract in order to secure to the Gulf, Colorado and Santa Fe Railway the future traffic to arise out of the timber cut from 'timber block' or any other timber manufactured during the life of this agreement, into lumber at the Conroe plant of the Delta Company, in consideration whereof the Delta Company covenants that the production of said Conroe sawmill plant so far as it may be shipped to points reached by said Gulf, Colorado and Santa Fe Railway and/or its connections, and to which points it furnishes a service equal to, and as cheap as, any via any competing line of transportation, shall from and after the date of this agreement, and during its life, be shipped over the railway of said Railway Company and its connections." Performance under the contract covered a period of several years, to the date of the appointment of receivers of the properties of the Delta Company in February, 1931. In some respects the transactions of the parties in acquiring and paying for timber and timber lands referred to in the contract were not in accordance with provisions of the written contract. The principal departure from the terms of the written contract was that in most instances the Delta Company, instead of securing options on timber land or standing timber and obtaining advances from the Southwestern Company before the options were exercised, purchased with its own funds timber or timber lands from the owners thereof, and thereafter, upon the Southwestern Company reimbursing it for the purchase money and expenses, conveyed the same to the Southwestern Company. The Southwestern Company had no actual notice or knowledge of the Delta Company's mortgage or deed of trust until after the appointment of receivers of the Delta Company in February, 1931. The receivers of the properties of the Delta Company took

possession of the properties which had been conveyed to the Southwestern Company as above stated and sold those properties after the Southwestern Company had asserted its claim thereto; the receivers having agreed with the Southwestern Company to hold the proceeds of the sales of those properties until the court should determine whether the trustees under the Delta Company's mortgage or deed of trust or the Southwestern Company were entitled to those proceeds. By the decree appealed from the court adjudged that the Southwestern Company was entitled to those proceeds, the amount of which was substantially less than the amount of the balance owed by the Delta Company to the Southwestern Company on account of the advances made by the latter. The trustees under the Delta Company's mortgage or deed of trust appealed from that decree.

■ The Delta Company's mortgage having been executed and recorded prior to the acquisition by the Delta Company or the Southwestern Company of title to the property which was conveyed to the Southwestern Company for a valuable consideration, under the Texas law the Southwestern Company, when it acquired title to that property, did not have constructive notice of the Delta Company's mortgage. The Southwestern Company had the status of a purchaser for a valuable consideration. It is a settled rule of Texas law that such a purchaser is not required to examine the records for conveyances by his grantor prior to the time the latter acquired the title conveyed by him to the purchaser. Breen v. Morehead, 104 Tex. 254, 136 S. W. 1047, Ann. Cas. 1914A, 1285; Williams v. Cook (Tex. Com. App.) 282 S. W. 574. No Texas decision which has come to our notice indicates that, where the maker of an instrument which contains an after-acquired property clause conveys property acquired by him after that instrument was recorded, the title of the grantee, who had no knowledge or notice of that instrument when the conveyance to him was made, is affected by such after-acquired property clause. The properties conveyed to the Southwestern Company were separate and distinct from those described in and conveyed by the Delta Company's mortgage, were properties which the Delta Company was not obligated to its mortgagee to acquire, and were acquired by the Southwestern Company without actual or constructive notice of the Delta Company's mortgage. This being so, there is no basis for a claim that the Southwestern Company's position

was similar to that of the unsuccessful litigant in the case of Dunham v. Railway Co., 1 Wall. 254, 17 L. Ed. 584, who, with full knowledge that the railway company had mortgaged its railway, entered into a contract with that company under which he claimed the railroad or an interest therein; or for a claim that the Southwestern Company was in a position similar to that of the unsuccessful litigant in the case of Toledo, etc., Railroad Co. v. Hamilton, 134 U. S. 296, 10 S. Ct. 546, 33 L. Ed. 905, who claimed that his mechanic's lien for building a dock on a lot which was part of the railroad covered by a mortgage thereof was entitled to priority over that mortgage. The position of the Southwestern Company is similar to that of the successful litigant in the case of United States v. New Orleans & O. R. Co., 12 Wall. 362, 365, 20 L. Ed. 434. In that case it was decided that the seller of rolling stock to a railroad company, which gave a bond for the purchase money wherein it was stipulated that the seller should have a lien therefor on the property sold, was entitled to priority over the railroad company's previously executed mortgage, which contained an after-acquired property clause. The ground of that decision is indicated by the statement in the court's opinion: "A mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands."

■ The timber properties which were conveyed to the Southwestern Company came into the control or ownership of the Delta Company in pursuance of a contract which obligated the Delta Company to request the Southwestern Company to acquire the same as security for the principal and interest of advances made by the Southwestern Company, provided for by the contract. The contract, as it was modified by the parties during performance under it, resulted in a course of dealings between the parties extending throughout a period of several years; the Delta Company acquiring control or ownership of timber properties, and the Southwestern Company making advances to the Delta Company for the purpose of paying the purchase prices of the properties and the expenses incident to acquiring ownership thereof. What occurred was substantially what was in the contemplation of the parties when the contract was entered into. An effect of the contract was to provide for timber properties so coming into the control or possession of the Delta

Company being conveyed to the Southwestern Company as security for advances made by the latter provided for by the contract. Such provision for property to be acquired in the future becoming security for advances to be made upon such acquisition occurring is effective to give rise, at the time of the acquisition of the property by the party who obtains advances thereon, to an equitable charge or lien thereon in favor of the maker of the advances provided for. Walker v. Brown, 165 U. S. 654, 664, 17 S. Ct. 453, 41 L. Ed. 865; Barnes v. Alexander, 232 U. S. 117, 121, 34 S. Ct. 276, 58 L. Ed. 530; Pomeroy's Eq. Juris. (4th Ed.) § 1236; 17 R. C. L. 604. When the after-acquired property clause of the Delta Company's mortgage attached to the timber properties in question those properties already were subject to the equitable lien or charge resulting from the Delta Company, at the time it acquired control or possession of those properties, being obligated to offer those properties to the Southwestern Company as security for advances the latter had a contract right to make for its own benefit or profit. It fairly is to be inferred that, but for the advances made by the Southwestern Company in pursuance of the arrangement evidenced by the contract between it and the Delta Company, the latter could not have acquired control or possession of the timber properties which were conveyed to the Southwestern Company as security for such advances. The circumstances attending the making of those advances were such as to create, in favor of the Southwestern Company, a lien or charge on the properties conveyed to it superior to the lien on those properties conferred on the Delta Company's mortgagee by the after-acquired property clause of that mortgage. Harris v. Youngstown Bridge Co. (C. C. A.) 90 F. 322, 329; Central Improvement Co. v. Cambria Steel Co. (C. C. A.) 201 F. 811, 827. In the case of Harris v. Youngstown Bridge Co., supra, in circumstances similar to those of the instant case, a mechanic's lien on property acquired by a mortgagor after the making of a mortgage which contained an after-acquired property clause was adjudged to be superior to that of the mortgagee. The following extract from the opinion rendered in that case by Circuit Judge (later Chief Justice) Taft indicates grounds of the conclusion reached by the court in that case, and by this court in the instant case: "Where, therefore, at the instance of the mortgagor, a third person pays the purchase money for additions, and takes title to them himself, or directs their conveyance directly to the mortgagor, with an express agreement that he shall have a lien for the purchase money, such lien is prior to that of the mortgagor, because it is only through his expenditure that the purchase is effected and the addition acquired. This is not a fraud upon the mortgagee, or a violation of any right of his, in any case where the mortgagor is under no affirmative obligation to the mortgagee to acquire additions to the property, or to acquire them free of lien. It may very well be that, unless the purchase money is secured by a first lien, no addition will be acquired. The security of the first mortgage is increased by the difference between the value of the addition bought, and the part of the price which the mortgagor did not pay. It is not perceived what prejudice the mortgagee suffers by the transaction. His security is certainly not worse, and it may be a great deal better, than before. Nor do we perceive that it destroys the lien that the debt contracted by the mortgagor for the purchase money is evidenced by negotiable bonds secured by mortgage delivered before the land is transferred. The bonds and mortgage are intended to represent, and do represent, a lien growing out of the acquisition of the lands, and the future holders of them are only the assignees of a purchase-money lien. So long as the lien asserted is for money used in good faith to acquire the very thing upon which the lien is claimed, we do not see how the first mortgagee is defrauded. When, however, that which is given the appearance of a vendor's or purchase-money lien is really only a device to secure money borrowed for other purposes of the mortgagor than the buying of the addition in question, then the attempt to supplant the first lien of the mortgage under the after-acquired property clause is a fraud upon the mortgage, and the pseudo purchase-money lien must be postponed to that of the mortgage."

In behalf of the appellee it was contended that the after-acquired property clause contained in the Delta Company's mortgage did not have the effect of conferring on the mortgagee any lien on the timber properties which were conveyed to the Southwestern Company, and that the record of that mortgage was not constructive notice as to standing timber. Those contentions were not sustained by the trial court. In view of conclusions above indicated, there is no occa-

sion for this court to pass on those contentions.

The decree is affirmed.