FARMERS ROYALTY HOLDING CO. et al.
v. CHERRY.

No. 11016.

Court of Civil Appeals of Texas. Galveston.

June 6, 1940.

Rehearing Denied July 3, 1940.

John T. Vance, of Edna, Scurry & Scurry, of Dallas, and Dudley, Hyde, Duvall & Dudley, of Oklahoma City, Okl., for appellants.

Rose & Sample, of Edna, for appellee.

CODY, Justice.

The primary question for determination in this case is whether, under the facts here presented, the rule—that a title subsequently acquired to land·by a grantor, who had previously conveyed an interest therein under warranty of title, passes eo irstante to the grantee—is here applicable.

The facts here presented are these: Dan Webel and wife owned the land involved in this suit, subject to the outstanding superior title and vendor's lien securing notes given by said owners as the purchase price for said land (which notes and security were owned by one William Kemper, at the time that the owners gave certain mineral deeds to the minerals in the land involved in this suit); one deed being a mineral deed, which was forthwith recorded; to Farmers Royalty Holding Company, which contained a general warranty of title; and another mineral deed, which was also forthwith recorded, to G. T. Blankenship, which contained a general warranty of title; and a portion of the interest conveyed to Blankenship was thereafter conveyed to W. R. Jarrett. A short while after the date of the mineral deeds just referred to, Dan Webel and wife filed suit in the District Court of Jackson County against the grantees in the aforesaid mineral deeds and their successors in interest, to have said deeds cancelled. The defendants in the suit brought by Dan Webel and wife for cancellation of said mineral.deeds had said cause removed to the Federal District Court. At this stage, William Kemper brought suit in the District Court of Jackson County, as the owner of the superior title and purchase money notes, to rescind the conveyance and recover the land involved in this suit, and made Dan Webel and wife, and each grantee in each mineral deed, and their successors in interest, parties.defendant to such rescission suit. In this suit for rescission, William Kemper recovered "all the rights, titles and

interests" of each of the defendants in the land involved in this suit, and by judgment in said suit the same were divested out of said defendants and vested in · William Kemper. Thereafter, on September 27, 1934, William Kemper and wife conveyed the land involved in this suit to the said Dan Webel in consideration of notes aggregating $1,550. Thereafter, on October 30, 1934, W. O. Cherry (appellee here) paid to Webel, as consideration for a deed to this land, $3,600 in cash, and gave his note —since paid—for $400, which consideration has been applied, according to agreement, in paying off the outstanding vendor's lien notes given by Webel to Kemper on September 27, 1934. Cherry had no actual knowledge of any claim against the land other than the vendor's lien of September 27, 1934, and did not actually know appellants, or those under whom appellants claim, claimed any interest in the land. The vendor's liens retained by Kemper, and by Webel, had been paid off and released; and appellee Cherry gave a mineral lease on the land here involved on April 5, 1938, and has collected all delay rentals thereon. W. O. Cherry brought this suit in trespass to try title against appellants, who are the grantees in the mineral deeds, aforesaid, or the successors in interest to said grantees in the mineral deeds. The appellants all filed formal answers, and pled "not guilty", and pled the mineral deeds under which they claim, and pled the general warranty of title from Dan Webel and wife, and pled that appellee was estopped from asserting a title from Dan Webel which was "an after-acquired title" that had passed to appellants, etc.

The case was tried without a jury, and the court rendered judgment for plaintiff, who is appellee here. At the request of appellants, the court filed his findings of fact, and conclusions of law. The substance of these findings of fact we have set forth above.

■■■ "It is established in this state that 'when one conveys land by warranty of title, or in such manner as to be estopped to dispute the title of his grantee, a title subsequently acquired to that land by the grantor will pass eo instante to his warrantee, binding both the warrantor and his heirs and subsequent purchasers from either.' Baldwin v. Root, 90 Tex. [546], 553, 40 S.W. 3, 6. It is also settled that the registration of such instrument of conveyance affects subsequent purchasers un-

der the grantor with constructive notice of the instrument (Robinson v. Douthit, 64 Tex. 101; Leonard v. Benford Lumber Co., 110 Tex. 83, 216 S.W. 382); provided the title, which is acquired by the grantor after the instrument is executed, originated prior to the execution of said instrument (Breen v. Morehead 104 Tex. 254, 136 S.W. 1047, Ann.Cas.19, 4A, 1285; Williams v. Cook (Tex.Com.App.) 282 S.W. 574)." Caswell v. Llano Oil Co., 120 Tex. 139, 36 S.W.2d 208, 211.

The foregoing quotation is part of the answer made to certain certified questions, which was adopted by the Supreme Court. In the Caswell case just quoted from the facts were that the owner of land, after he had placed a deed of trust thereon, gave to H. H. Patterson an oil and gas lease for a valuable consideration, who transferred it to the Llano Oil Company with general warranty of title. Thereafter, and after default in payment of the deed of trust notes, the deed of trust lien was foreclosed, the foreclosure sale being held by the substitute trustee, and sale of the land was made to Otto Stolley; and the oil and gas lease theretofore given by the original owner to H. H. Patterson, and by him transferred to Llano Oil Company, was cancelled and terminated. Thereafter, Otto Stolley, the purchaser at the foreclosure sale, conveyed the land to the original owner (who had given the deed of trust thereon, and then given the mineral lease which was transferred to the Llano Oil Company) and then such original owner gave a mineral lease to the plaintiff in the case, for a valuable consideration, and such plaintiff was without actual knowledge of the adverse claim of the Llano Oil Company. The Supreme Court, through its Commission of Appeals, held: "It appears from the certificate that the title to the two sections of land in controversy, which was acquired by Lockhart [original] owner from Stolley, originated some time prior to the execution by Lockhart of the mineral lease to Patterson. This lease containing as it does a covenant of warranty of title, was duly of record when Caswell [plaintiff] purchased from Lockhart, and Caswell was thereby affected with constructive notice of the rights of the Llano Oil Company in the land, as assignee of Patterson."

And the court further held that it was immaterial whether the sale by the substitute trustee was valid or not so far as

concerned the right of the Llano Oil Company to take by "after-acquired title" of its warrantor of title. The Llano Oil Company was obviously entitled to prevail if the trustee's sale was void, if it was entitled to prevail even if the trustee's sale was valid.

It is undisputed that Webel and wife had given the mineral deeds under which appellants claim at a time which the superior title was outstanding to secure the payment of the unpaid purchase price notes and that said mineral deeds contained a covenant warranty of title; i. e., to say Webel and wife gave a warranty to the effect that the superior title was not outstanding and that they had a right to convey the title to the minerals which was conveyed in the mineral deeds. The title which Webel and wife warranted to appellants failed when Kemper recovered judgment in the case of Kemper v. Webel et al., against Webel and wife and against appellants. And if the mineral deeds were procured by appellants from Webel and wife upon a valuable consideration, the moment that the title failed—the moment that Kemper recovered the title by rescinding the sale of the land involved in this suit—Webel and his wife became liable to appellants for the breach of their covenant of warranty. And under the Caswell case and the authorities therein cited, the remedy of appellants against Webel and wife for the breach of their warranty of title to the minerals after Webel and wife acquired the title to such minerals, is simply to require the Webels to make their warranty of title good by treating the title as passing into appellants the instant that it passed into Webel.

It is appellee's contention, however, that the language of the judgment in the case of Kemper v. Webel et al., divested completely and absolutely all the right, title and interest of the defendants in the suit out of them, and vested the title thereto in Kemper. Appellee further contends that when the very language of the judgment divests all the rights, titles and interests of appellants in the minerals, that the divestiture of all the rights owned by appellants in the land necessarily includes the divestiture of right of appellants to the land if Webel and wife thereafter acquire such land. And further that if the judgment in the case of Kemper v. Webel goes further then it should, and is erroneous, yet appellants did not appeal from said judgment, and it is now final and binding, and appellants cannot treat such judgment as a nullity. Furthermore, appellee contends that it is a very valuable right to the owner of land to have the whole world for a market to sell in, and that if the rule in the Caswell case should be enforced it would deprive one who forecloses on land of the valuable right to sell the land foreclosed on to a former owner who was situated with respect to it as Webel to the land here involved; for if Webel knew that by purchasing the land he was merely acquiring it for his warrantees in former conveyances he would never purchase it.

It is not true, we believe, that the owner of property is entitled to the whole world as prospective purchasers of such property. He is not entitled to sell it, for instance, to any who are under legal disabilities, such as lunacy or minority. And where he has sold land and warranted the title thereto, and yet did not own the land at the time he sold it, it is clearly the duty of such a one, if he is able, to buy such land, and thereby make his warranty good, or compensate his warrantees for breach of his warranty. In any case, this is the law as it now stands and arguments for changing it should be addressed to the legislative branch of Government.

To us it is self-evident that the judgment rendered in the case of Kemper v. Webel et al., and which appellee relies on, did not have the effect of precluding the defendants, or any of them, in that suit from thereafter acquiring the title to the land which constituted the subject matter of that suit. Citation of authority in support of this point is superfluous, but see R. B. Godley Lumber Co. v. C. C. Slaughter Co., Tex.Civ.App., 202 S.W. 801, 802, and cases there cited. Indeed, both appellee and appellants are here claiming that Webel, one of the defendants in that suit, did acquire the title to such land from Kemper. And the only dispute between the parties is the legal effect which followed the vesting of Webel with the after-acquired title to said land. Appellee contends that Webel took the land free from the obligation imposed upon him by the breach of his covenant of warranty. Appellants contend that the law imposed on Webel the obligation to use the land to make good his covenant of warranty. The Caswell case sustains appellants' contention.

If appellants acquired their mineral deeds upon a valuable consideration, it was clearly the duty of Webel to protect appellants against the outstanding vendor's lien notes against which he had given warranties. Pursuant 'to this obligation, Webel should have paid off the indebtedness due Kemper and should not have suffered Kemper to recover the title to the land. There is nothing in the judgment which was rendered in the case of Kemper v. Webel et al., that, by any possible construction, can be given the effect of relieving Webel of the obligation to make appellants whole, after breaching his covenant of warranty of title. The effect, and the only effect of vesting appellants with the after acquired title to minerals, is to make appellants whole at the hands of Webel.

We realize that appellee purchased in actual ignorance of the rights of appellants, and that the practical result is that appellants obtain a windfall at the expense of appellee. This hardship is cast on appellee by the constructive notice with which the registration of the mineral deeds charged him. The right of appellants to recover the after-acquired title is dependent upon their covenants of warranty of title which were enforceable against Webel. If they were fraudulently obtained, as Webel contended in the suit that was removed to the Federal court, which contention abundantly appears in this case, then they should not be enforced. The fact that the court rendered judgment for appellee in this suit upon the theory that the judgment in Kemper v. Webel et al. cut off appellants, should not be permitted to deprive appellee of the right to defend on the ground that the mineral deeds were fraudulently procured.

The judgment of the court is reversed, and the cause remanded for a new trial.

Reversed and remanded.

On Motions for Rehearing.

The motions of both parties have been duly considered, and are overruled. The case of Waldo v. G., H. & S. A. Ry. Co., Tex.Com.App., 50 S.W.2d 274, is ample authority to support our action in remanding the cause for a new trial. Unless appellants are able to establish that the covenants of warranty which entitle them to recover, if at all, are valid and enforceable, they are not entitled to prevail under the doctrine of after acquired title. And if, under the law of constructive notice, appellee is bound to take the title from Webel burdened with his obligations in connection therewith, certainly appellee's position in that connection cannot justly be more onerous than Webel's position would be.

Overruled.