**ROSEWOOD PROPERTIES, INC., Appellant,**

v.

**COMMUNITY CREDIT UNION et al., Appellees.**

**No. 11–96–062–CV.**

Court of Appeals of Texas, Eastland.

April 3, 1997.

Rehearing Overruled May 22, 1997.

Byron L. Woolley, Simpson, Woolley, & McConachie, Dallas, for appellant.

William A. Taylor, James E. Essig, Kenneth P. Wise, Liddell, Sapp, Zivley, Hill, & Laboon, Houston, for appellees.

Before ARNOT, C.J., DICKENSON, J., and McCLOUD, Senior Justice.*

---

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

## OPINION

McCLOUD, Senior Justice (Retired).

Rosewood Properties, Inc. sued Community Credit Union and its assignees (AGF Pitman, Ltd. and Tower Spur I, Ltd.), claiming ad valorem tax liens on certain land and buildings. Rosewood owned 50 percent of the property, but it paid 100 percent of the ad valorem taxes owed for 1986 and 1987. The defendants argued that the tax liens were extinguished when Rosewood paid the ad valorem taxes because Rosewood was jointly and severally liable for the taxes, that Rosewood failed to utilize the remedy provided by TEX.PROP.TAX CODE ANN. § 33.46 (Vernon 1992), and that Rosewood was estopped from asserting any interest in the property because of the after-acquired title doctrine. All parties moved for summary judgment. The trial court denied Rosewood's motion and granted the defendants' motion that Rosewood take nothing. We reverse and render.

The parties are in agreement that there are no factual disputes and that the determinative issue is how the relevant statutes apply to undisputed facts.

The record shows that Rosewood Properties, Inc. owned an undivided one-half interest in the land and buildings upon which the ad valorem taxes were owed. The owner of the other undivided one-half interest was the William Herbert Hunt Trust Estate, and it authorized Rosewood to pay its portion of the ad valorem taxes and to receive a transfer of the tax liens. The tax collector executed transfers of the tax liens pursuant to TEX. PROP.TAX CODE § 32.06 (1979)[1] when the payments from Rosewood were received.

The trial court stated in its order ruling upon the motions for summary judgment that:

Rosewood cannot foreclose alleged tax liens against the property because Rosewood was jointly and severally liable with the Hunt Trust for all of the taxes due on the property and such alleged tax liens were extinguished when Rosewood paid all of the taxes due on the property.

Rosewood cannot foreclose alleged tax liens against the property because the purported assignments of tax liens to Rosewood from the taxing authorities are invalid due to Rosewood's failure to comply with the Texas Tax Code [Section 33.46].

Rosewood cannot foreclose the alleged tax liens against the property because the doctrine of after-acquired title estops Rosewood from asserting any interest in the property.

Section 32.06 specifically provides that a "person authorized to pay another's taxes" can secure a transfer of the tax lien if it is "a person other than the person liable for the taxes when imposed." Section 32.06 provides in relevant part:

(a) A person may authorize another person to pay the taxes imposed by a taxing unit on his real property by filing with the collector for the unit a sworn document stating the authorization, naming the person authorized to pay the taxes, and describing the property.

(b) If a person authorized to pay another's taxes pursuant to Subsection (a) of this section pays the taxes and any penalties and interest imposed, the collector shall issue a tax receipt to the person paying the taxes. In addition, the collector shall certify on the sworn document that payment of the taxes and any penalties and interest on the described property has been made by a person other than the person liable for the taxes when imposed and that the taxing unit's tax lien is transferred to the person paying the taxes.

■ Defendants argue that Rosewood cannot rely upon Section 32.06 because it was jointly and severally liable for the ad valorem taxes on the jointly-owned property. Defendants cite TEX.PROP.TAX CODE § 32.07(a) (1979)[2]; TEX.PROP.TAX CODE ANN. § 25.11 (Vernon 1992); *BW Village, Ltd. v. Tricon Enterprises, Inc.,* 879 S.W.2d 205 (Tex.

---

1. The substantive law as it applies to this suit was not changed by the 1995 amendments to Section 32.06(a) & (b).

2. The substantive law as it applies to this suit was not changed by either the 1993 or 1995 amendments to Section 32.07(a).

App.—Houston [14th Dist.] 1994, writ den'd); and *Baldwin v. Hull–Daisetta Independent School District*, 95 S.W.2d 1350 (Tex.Civ. App.—Beaumont 1936, writ dism'd), to support their argument. We conclude that the cited authorities are not controlling.

Section 32.07(a) provides that "property taxes are the personal obligation of the person" who owns the property. Rosewood only owned an undivided one-half interest in the property. Section 25.11 provides that property owned in "undivided interests may be listed jointly in the name of all owners of undivided interests in the property or in the name of any one or more owners." This section deals with how property may be listed in appraisal records.

Defendants point to language in *Baldwin* wherein the court said:

It is well settled that suit for collection of taxes assessed against property in this state may be prosecuted to judgment against all or only a part of the joint owners of such property.

This statement was made by the court in answering the argument that the trial court erred in "foreclosing the tax lien" because "necessary parties" were not before the court. The court did not hold that the tenants in common were jointly and severally liable for the full amount of the taxes owed on the property. As to the individual liability of Hattie Baldwin, an undivided fifty percent owner of the property, the court stated:

It was the duty of Hattie Baldwin to pay the taxes lawfully chargeable against her interest in the property, and her failure to do so rendered her interest therein subject to foreclosure and sale.

\* \* \* \* \* \*

The judgment protected the rights of Hattie Baldwin in such event by limiting the amount to be received from her by reason of such deficiency to such sum as would make in all one-half of the total amount due against said property, and being the amount due and owing by said appellant individually.

The court specifically provided in the judgment that Hattie Baldwin would not be personally liable for her joint owner's taxes.

We conclude that *BW Village* is not in point and does not support defendants' argument.

In *Bashara v. Saratoga Independent School Dist.*, 153 S.W.2d 1006 (Tex.Civ. App.—Beaumont 1941), *rev'd*, 139 Tex. 532, 163 S.W.2d 631 (1942), the trial court rendered a personal judgment against Sam Bashara for delinquent taxes. The judgment covered taxes due on the surface estate and the entire mineral estate. The record showed that a fractional interest in the minerals was owned by Mrs. Baker. Bashara and Baker were tenants in common as to the mineral ownership in the tract. The Court of Civil Appeals held, as urged by defendants in this case, that Bashara, the co-owner of the mineral estate, was jointly and severally liable for all of the taxes on the mineral estate. The Court of Civil Appeals held:

The judgment in this respect was not erroneous. The interest of each co-owner of a tract of land is liable for the taxes assessed against the entire tract, and suit may be maintained against each co-owner, or all of them, for all the taxes assessed against the entire tract of land. *Elmendorf v. City of San Antonio*, Tex.Civ.App., 223 S.W. 631; *Underwood et al. v. Pigman et al.*, Tex. Com.App., 32 S.W.2d 1102.

The Supreme Court reversed the Court of Civil Appeals and strongly disapproved of that court's holding that one cotenant was personally liable for the taxes owed by a different cotenant, stating:

Under these circumstances, can this court approve a procedure the effect of which is to render a personal judgment against one citizen for taxes due on property which the taxing authorities knew (or could have known) belonged to another citizen? The question answers itself. Such a conclusion could neither be justified nor excused. The amount involved is small, but the principle is as large as our concept of government. It is the high duty of every citizen to pay lawful taxes legally assessed against property he owns because in doing so he helps to maintain the institutions of this country. But for the courts to uphold an attempt by any taxing arm of government

to make him pay taxes on property he does not own and never did own, with knowledge that he does not own it and never did, would all but destroy the citizen's incentive to pay taxes.

\* \* \* \* \* \*

Since respondent's officials possessed either the knowledge or the means of knowledge that Mrs. Baker owned a taxable interest in the 100 acres, their action in rendering the entire interest for taxes against Bashara was arbitrary, illegal and void. It was their duty under proper assessment to seek from Mrs. Baker the taxes justly due on the interest owned by her and from Bashara only those justly due on the interest owned by him. (Citations omitted)

We hold that Rosewood was not jointly and severally liable for the ad valorem taxes on the jointly-owned property.

■ The defendants also argue that Rosewood failed to comply with Section 33.46 which provides that:

(a) If suit is filed to foreclose a tax lien on real property owned in undivided interests by two or more persons, one or more of the owners may have the property partitioned....

(b) The court shall apportion the taxes, penalties, interest, and costs sued for to the owners of the property in proportion to the interest of each. If an owner pays the taxes, penalties, interest, and costs apportioned to him, the property partitioned to him is free from further claim.

Section 33.46 is an additional remedy which is available to joint owners of property. Its existence should not prevent one co-owner from authorizing another co-owner to pay all of the ad valorem taxes and to secure a transfer of the tax lien as to the co-owner's portion of the taxes. As a matter of policy, the payment should be permitted to avoid the necessity of tax foreclosure suits.

■ Defendants contend that the after-acquired title doctrine estops Rosewood from asserting any interest in the property. This rule, which is a part of the law of estoppel, was applied in *Clark v. Gauntt*, 138 Tex. 558, 161 S.W.2d 270 (1942), wherein the court stated:

It is a general rule, supported by many authorities, that a deed purporting to convey a fee simple or a lesser definite estate in land and containing covenants of general warranty of title or of ownership will operate to estop the grantor from asserting an after-acquired title or interest in the land, or the estate which the deed purports to convey, as against the grantee and those claiming under him.

The controlling issue is what did the deeds of trust, which were executed by Rosewood and the Hunt Trust several years before the tax liens were assigned to Rosewood, purport to convey to the trustee. When the instruments were executed, no taxes were due or unpaid. There were no tax liens to be paid or assigned at that time. The court in *Cornish v. Yarbrough*, 558 S.W.2d 28, 33 (Tex. Civ.App.—Waco 1977, no writ), discussed subsequently acquired interests:

A warranty only refers to the interest conveyed, and the grantor will not be estopped to assert another interest in the land subsequently acquired. *Talley v. Howsley* (Tex.1943) 142 Tex. 81, 176 S.W.2d 158 at p. 160. That is to say, the estoppel does not apply to any interest after-acquired which was not purportedly granted. *Clark v. Gauntt* (1942) 138 Tex. 558, 161 S.W.2d 270 opinion adopted. The estoppel cannot operate to vest in the grantee a greater estate than the deed itself would have conveyed. *Chace v. Gregg* (Tex.1895) 88 Tex. 552, 32 S.W. 520.

In *Caswell v. Llano Oil Co.*, 120 Tex. 139, 36 S.W.2d 208, 211 (1931), the court pointed out that the after-acquired title doctrine applied:

[P]rovided the title, which is acquired by the grantor after the instrument is executed, originated prior to the execution of said instrument (*Breen v. Morehead*, 104 Tex. 254, 136 S.W. 1047, Ann. Cas. 1914A, 1285; *Williams v. Cook* [Tex.Com.App.] 282 S.W. 574).

See also: 4 LANGE AND LEOPOLD, LAND TITLES AND TITLE EXAMINATION § 731 (Texas Practice 1992).

Rosewood did not purport to convey the Hunt Trust tax liens in 1979 and 1980 when it executed the deeds of trust. The tax liens did not originate or exist until 1986 and 1987. The after-acquired title doctrine is not applicable.

The judgment of the trial court is reversed, and judgment is rendered that Rosewood's motion for summary judgment is granted and that the defendants' motions for summary judgment are denied.