SOUTHWESTERN MANUFACTURING COMPANY v. W. E. HUGHES ET AL.

Decided December 11, 1900.

**Record of Deed—Acknowledgment—Disqualification of Notary—Constructive Notice—Innocent Purchaser.**

Where a deed of trust upon land, executed to a mortgage company and recorded in the proper county, was acknowledged before a notary who was attorney for and a director of the mortgage company, but this fact did not appear upon the face of the deed or the certificate of acknowledgment, and was not known to defendants who subsequently purchased from the mortgage company the notes secured by the deed of trust, and later purchased the land under a foreclosure of the trust deed, the record of such instrument was effectual to charge with constructive notice one who purchased the land under the lien of a judgment against the maker of the trust deed attaching after such record, and defendants, as innocent purchasers, had the superior title to the land. Following Titus v. Johnson, 50 Texas, 234.

APPEAL from Dallas. Tried below before Hon. RICHARD MORGAN.

*J. T. Downs,* for appellant.

*Coke & Coke,* for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was instituted by plaintiff in error in the District Court of Dallas County against W. E. Hughes and J. W. Springer in trespass to try title to recover the east one-half of lot 7, block 51-55, in the city of Dallas. The petition contained the usual averments of a petition in trespass to try title. Defendants plead not guilty. There was a trial by the court without the intervention of a jury, and judgment was rendered in favor of defendant Springer quieting him in his title to the premises, plaintiff having dismissed as to Hughes before trial. From this judgment the plaintiff has sued out a writ of error to this court. The court filed the following findings of fact, which we adopt:

Findings of Fact.—"1. The title to the property in controversy, on and immediately prior to August 5, 1889, was in J. E. Henderson, and both plaintiff and defendants claim under and through him as common source of title.

"2. Plaintiffs' title or claim to said property in controversy rests and depends on two judgments against said Henderson and executions, levies, and sales thereunder. The first of said judgments is in favor of E. M. Powell, against the said Henderson and others, and was obtained November 22, 1892. The second of said judgments is in favor

of the North Texas National Bank, against said Henderson, and was
obtained January 3, 1894. Executions were issued on both of said
judgments within a year from their respective dates, and they were ab-
stracted and recorded for the purpose of fixing judgment liens on the
property of the several defendants named therein, the first on December
5, 1892, and the second on January 25, 1894. Both of said judgments
were, before the first day of January, 1895, transferred to plaintiff, and
have since been held and controlled by it.

"3. Executions were issued on said judgments January 13, 1893,
May. 5, 1893, November 15, 1897, and July 12, 1898. Under the last
of said executions, which were issued at the request and for the benefit
of plaintiff, the property in question and two other tracts, not material
to this controversy, were, on July 12, 1898, levied on as the property of
the said J. E. Henderson, said levies being made upon all the right, title,
and interest which the said Henderson had in and to the same on De-
cember 5, 1892, and on the 25th of January, 1894, respectively, or at
any time thereafter. After due advertisement, the said three tracts
levied on as aforesaid were sold between lawful hours on the first Tues-
day in August, 1898, being the second day of said month, at the
courthouse door in Dallas County, Texas, at which sale the plaintiff
became the purchaser of the property in controversy under each of said
executions at the price of $10 each, which bids were credited on the re-
spective judgments. Deeds to plaintiff were made by the sheriff of Dal-
las County to said property in due form, the deed under said Powell
judgment being duly recorded in Dallas County record of deeds on
January 30, 1899.

"4. On August 5, 1889, J. E. Henderson executed and delivered a
deed of trust of that date to J. T. Dargan, trustee, which purported to
convey to said trustee the property in controversy for the purpose of se-
curing the payment of three certain promissory notes for $5000 each,
of even date with said trust deed, payable to the order of the Security
Mortgage and Trust Company on July 1, 1894, with interest payable
semi-annually on January and July 1st of each year. This instrument
was in the usual form, and it and said notes secured by it made provi-
sion for maturing the whole debt upon certain defaults therein specified
and for the appointment of a substitute trustee in case of the refusal
or inability of the said Dargan to act, or his absence from Dallas
County. Said notes are fully described in said instrument. Said notes
and trust were given to secure the payment of a loan of $15,000, made
by the said Security Mortgage and Trust Company to the said Hen-
derson at the date of the execution of said notes and trust deed. Said
trust deed was acknowledged by the said Henderson before D. E. Greer,
a notary public of Dallas County, Texas, in proper form, on the day
of its date, and was on the same day filed for record in the office of the
county clerk of Dallas County, Texas, and recorded in volume 31, page
380, of the record of mortgages and trust deeds of said county.

"On October 1, 1891, said Henderson made and executed a general

warranty deed of that date which purported to convey the property in controversy to the Dallas Realty Company, a private corporation duly incorporated under the laws of Texas, reciting as consideration for that conveyance the sum of $34,000, being $19,000 cash in hand paid, and the assumption by said realty company of three notes for $5000 each, executed by said Henderson August 5, 1889, and payable to the order of the said Security Mortgage and Trust Company July 1, 1894, and secured by trust deed made by said Henderson to J. T. Dargan, trustee, recorded in book 31, page 380, being the same three notes for $5000 hereinbefore described, which deed was, on October 3, 1891, properly acknowledged by the said Henderson, and thereafter, on the same day, filed for record in the office of the county clerk of Dallas County, and recorded in book 131, page 560, deed records of said county. Other deeds were made by said Henderson on October 1, 1891, to said realty company, which, with the deed above referred to, expressed considerations aggregating more than $200,000.

"On December 26, 1893, the aforesaid three $5000 notes of said Henderson remaining unpaid, said defendants, Hughes and Springer, purchased from said Security Mortgage and Trust Company said notes and the ten interest coupons attached to each, paying therefor to said company the sum of $15,000, being $5000 paid in cash, and two notes of the said Hughes and Springer payable to the order of the Security Mortgage and Trust Company, one due six months after date and the other twelve months after date, each for $5000, and each dated December 26, 1893. Said notes and coupons were then and there, on December 26, 1893, indorsed, transferred and delivered by said Security Mortgage and Trust Company to said defendants, Hughes and Springer, who thereby became the legal owners and holders of the same. Said interest coupons on aforesaid notes, due January 1 and July 1, 1893, remaining unpaid, said Hughes and Springer elected on January 10, 1894, to declare, and did declare said notes due as provided therein. And said Dargan, trustee, being absent from Dallas County, and having refused to act as trustee, said Hughes and Springer did, on said 10th day of January, 1894, in accordance with the provisions of said trust deed of August 5, 1889, appoint D. E. Greer substitute trustee, and requested him to proceed to make sale of said property in question as provided by said deed of trust. Said Greer, as substitute trustee, having first advertised the sale of said property as required by said trust deed, did, on February 6, 1894, at public auction, at the county courthouse door in Dallas County, within lawful hours, offer said property for sale, at which the Security Mortgage and Trust Company became the purchaser of the same. On the same day the said Greer, as substitute trustee, made a deed to said mortgage company for said property in pursuance of the aforesaid sale under said trust deed, which deed purported to convey to said mortgage company the property in controversy herein. Said deed was duly acknowledged, and on February 9, 1894, filed for

record in the office of the county clerk of Dallas County, Texas, and was duly recorded in the deed records of said county.

"On February 7, 1894, said Security Mortgage and Trust Company made to defendants Hughes and Springer a general warranty deed for the property in controversy, which deed purported to convey said property to said defendants, reciting a consideration of $15,000, being $5000 paid, and two notes of the said Hughes and Springer for $5000 each, due June 26, 1894, and December 26, 1894, respectively. The said $5000 recited as the consideration for said deed was in fact the $5000 paid for said three notes on December 26, 1893, and the two $5000 notes recited in said deed were in fact the notes made December 26, 1893, upon the purchase by said Hughes and Springer of the three notes of Henderson for $5000 each. Said deed was on the day of its date acknowledged in proper form before D. E. Greer, notary public, Dallas County, Texas, and recorded in book 176, page 159, of the deed records of said county. Said two $5000 notes referred to in aforesaid deed of February 7, 1894, were thereafter paid by said Hughes and Springer, and duly released by said mortgage company by release dated December 12, 1894, and duly recorded in Dallas County record of deeds.

"5. Between February 7, 1894, and January 1, 1898, defendant Hughes made, executed, and delivered to defendant Springer a quit-claim deed purporting to convey to the said Springer the property in controversy in this case, and said Springer, prior to the institution of this suit, owned and still owns all of the interest and title acquired by himself and Hughes by virtue of the transactions hereinbefore set out.

"6. D. E. Greer was, on August 5, 1889, when he took the acknowledgment of J. E. Henderson to said trust deed of that date from Henderson to Dargan, trustee, the attorney of said Security Mortgage and Trust Company, the owner of the notes thereby secured, and was during the entire year of 1894, when he was appointed substitute trustee under aforesaid trust deed by defendants Hughes and Springer, and took the acknowledgment to the deed of February 7, 1894, from the Security Mortgage and Trust Company to said Hughes and Springer, the attorney for said mortgage company, and also a stockholder and director in said company; but said defendants Hughes and Springer had no notice of the relations of the said Greer to the said Security Mortgage and Trust Company, or that he was attorney, stockholder, or director therein prior to the institution of this suit, save such constructive notice as they had from the records of Dallas County hereinbefore mentioned.

"7. E. M. Powell had no notice at any time of the condition of J. E. Henderson's title, or of any incumbrance against the property in controversy, save such constructive notice as he derived from the records of Dallas County, Texas.

"8. In the summer of 1891, J. E. Henderson, J. G. Wainwright, E. Blankenship, and two others incorporated the Dallas Realty Company hereinbefore mentioned, the authorized capital stock of which company and the number and values of its shares was not shown by the evidence.

There was never any organization of the company; no stock was ever issued or stockholders' meetings held, and no election of directors of said company was ever had. Said company never had any officers except the directors named in the charter as those for the first year. No stock books were ever opened nor subscriptions to stock solicited, and said company never acquired anything except the property deeded to it by said Henderson as hereinbefore set out. The directors named in the charter for the first year never acted as directors, and the said Henderson was the sole stockholder and manager of said company. The charter of the company was forfeited in the spring of 1894 by the Secretary of State of Texas for nonpayment of the franchise tax."

The trial court also filed four conclusions of law, the first, second and fourth of which are as follows:

"1. I find that said trust deed of August 5, 1889, from J. E. Henderson to J. T. Dargan, trustee, described in the fourth finding of fact above, was in all respects valid and binding, and that it created upon said property in controversy herein a valid lien.

"2. I find that said acknowledgment to aforesaid trust deed entitled it to record, and that, as recorded, it was notice to plaintiff of the existence of said lien prior to and at the time of the acquisition of the liens of the judgments under which plaintiff claims.

"4. I further find that under the said sale under aforesaid trust deed of August 5, 1889, from said Henderson to Dargan, trustee, and the trustee's deed made thereunder and the mesne conveyances under the grantee in said trustee's deed down to said Springer, the said Springer acquired a good and valid title to the property in controversy, and was, at the institution of this suit, the owner thereof, free of any claim whatsoever on the part of plaintiff.

"I therefore find that the defendant Springer (this case having been dismissed as to defendant Hughes) is entitled to judgment herein, and it is so ordered."

*Opinion.*—The plaintiff in error challenges the above conclusions of law of the trial judge, and contends (1) that there was error in holding that the trust deed of August 5, 1889, from J. E. Henderson to J. T. Dargan, trustee, was in all respects valid and binding and created a lien upon the property; and (2) in holding that the acknowledgment to said deed of trust entitled it to record, and that, as recorded, it was notice to plaintiff of the existence of the lien prior to the time that plaintiff acquired the judgment lien under which it acquired title.

Appellant's first contention is untenable. The deed of trust from Henderson to Dargan, trustee, for the benefit of the Security Mortgage and Trust Company, was valid as between the parties without being acknowledged or recorded. It took effect from the time of its delivery, in the absence of an acknowledgment. An acknowledgment was necessary to entitle it to be recorded. When the deed of trust was presented

to the county clerk to be recorded, it contained a certificate of a notary public showing upon the face of such certificate that the deed of trust had been duly acknowledged by the grantor therein. There was nothing in the face of the deed of trust or the certificate of acknowledgment showing any disqualification upon the part of the notary public to take the same. The clerk recorded the instrument, and appellee [plaintiff] acquired its interest in the land subsequent to such recording. Was the record notice to plaintiff of the lien created by the deed of trust?

The case of Titus v. Johnson, 50 Texas, 224, was a case in which there was an attack made by a subsequent purchaser upon the sufficiency of the record of an instrument conveying land, by showing (1) that the officer who took the acknowledgment had an interest in the land, and (2), by showing that the acknowledgment was taken outside of the county for which the officer was commissioned as notary.

In passing upon the right of a subsequent purchaser to impeach a notary's certificate, and thereby the record, upon these grounds, Chief Justice Moore, speaking for the court, says: "But here we are asked to hold the record of a deed ineffectual for the purpose for which it was required by law to be made, though in all respects apparently correct and in strict accordance with law, on parol evidence adduced by subsequent purchasers long after the deed was recorded, to impeach, not the genuineness of the instrument or the verity of the facts stated in the certificate, but to prove matters wholly extraneous thereto, with the view of showing that the officer by whom the certificate was made did not possess the capacity to give the certificate, or was not acting within the sphere of his duty. When an instrument with the certificate of acknowledgment or proof of execution as required by law is presented to the recorder, it is made his imperative duty to record it; and we find nothing in the statute, and have been cited to no authority, to warrant our saying, when it has been thus recorded, that the effect of its record, many years afterwards, may be destroyed by parol evidence impeaching the truth of the certificate upon which the record was made, though verified by the official signature and seal of a public officer. Certainly we do not feel inclined, in the absence of authority in its support, to give our sanction to a doctrine so detrimental, in our opinion, to public interest, and so well calculated to undermine and destroy the foundation upon which the holders of recorded titles now rest in security."

This decision, in our opinion, is conclusive as to appellant's second contention. The record shows that neither Hughes nor Springer had any notice that Greer, the officer who took the acknowledgment and made the certificate, was the attorney of the Security Mortgage and Trust Company, or that he was a stockholder or director in said company. The record did not give any notice of these facts.

The record of the deed of trust was notice to plaintiff of the lien under which defendant derives title. The defendant, having no notice of any disqualification of the notary who took the acknowledgment of Henderson thereto, will be protected as an innocent purchaser. There

is no merit in appellant's first and second assignments of error, and they are overruled.

This ruling makes it unnecessary for us to consider the third assignment.

The court did not err in rendering judgment for the defendant, and the same is affirmed.

*Affirmed.*

Writ of error refused.