## MANUEL YNDO v. ANTONIO RIVAS ET AL.

### No. 2418. Decided November 24, 1915.

**1.—Limitation—Principal and Surety—Payment by Note.**

Where a surety on several notes executed to the payee, in lieu thereof, his own negotiable note for their aggregate amount secured by mortgage, the creditor refusing to look further to the principal for the debt or to renew his and the surety's notes, the new note so executed constituted a payment of the previous notes; action to recover for money spent by the former surety in discharging it was on an implied contract for reimbursement, not on a written obligation, and was barred by limitation in two years; and limitation ran from the date of payment by execution of the new note, not from that of the discharge of such note. (Pp. 412, 413.)

**2.—Same.**

Evidence considered is held conclusive of the fact that a new note executed by the former surety alone was given and accepted in full payment of previous notes by the principal on which the maker of the new note was surety. (Pp. 409-412.)

**3.—Limitation—Forbearance.**

Where the surety's right of action for reimbursement is complete, mere forbearance to enforce it, without such contract as would prevent suit by him, will not interrupt limitation against him. Promises of the principal to pay or provide for the debt at some uncertain future time did not constitute such contract nor interrupt limitation. (P. 413.)

**4.—Immaterial Error.**

A peremptory charge to find for defendant on his plea of limitation having been given and being warranted by the evidence, other assigned errors become immaterial. (P. 413.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Yndo prosecuted error from a judgment for defendants in his suit against Rivas and others, and on affirmance obtained writ of error from the Supreme Court.

*D. McAskill*, for plaintiff in error.—Where Rivas and Yndo agreed that the Yndos would take the debt of Rivas in their own name, but that Rivas was to pay the same, and that Yndos were to be simply sureties, this did not make a new debt and release Rivas from the payment of the debt which he owed Frank. 7 Cyc., pp. 893, 894, 1011, 1013, 1020, 1021, 1024 and 1027, and authorities there cited; Burge on Suretyship, p. 212; Brandt on Suretyship, arts. 29, 31; Smith v. Doak, 3 Texas, 215; Burke v. Cruger, 8 Texas, 67.

The debt due A. B. Frank was not paid until Frank got his money, and the taking of additional securities or changing the form of the securities did not pay the debt. Huffcut on Neg. Inst., pp. 573 and 582, and cases cited; Lyndonville Nat. Bank v. Fletcher, 68 Ver., 81; Humboldt Bank v. Rossing, 95 Iowa, 1; Faires v. Cockrell, 88 Texas, 428, 437, 31 S. W., 190, 28 L. R. A., 528; Whitaker v. Sanders, 52 S. W., 640; Silliman v. Gammage, 55 Texas, 371, and cases there cited.

Where there was an agreement between the Yndos and Rivas that Rivas owed the debt, and that the Yndos were sureties, and the form of surety was the execution of the papers in the names of Yndos as owners of property, this did not change the fact that Rivas was the principal. Burke v. Cruger, 8 Texas, 66, 58 Am. Dec., 102; Kellogg v. Iron City Nat. Bank, 26 S. W., 856; Smith v. Doak, 3 Texas, 223; Gibbs v. Penny, 43 Texas, 563.

*Bertrand & Arnold* and *R. S. Cosby,* for defendants in error.—A surety who has paid the note of the principal, can not maintain an action upon the original note, as that has been extinguished by the payment. His relief rests upon the implied promise of reimbursement which arises out of the transaction. Holliman v. Rogers, 6 Texas, 91; Willis v. Chowning, 90 Texas, 617, 40 S. W., 396; Am. & Eng. Enc. of Law, vol. 27, pp. 474 and 468; Faires v. Cockerell, 88 Texas, 428, 31 S. W., 191; Neale v. Newland, 4 Ark., 506, 38 Am. Dec., 43.

When the surety discharges the joint obligation of himself and his principal by giving his own negotiable paper which the obligee accepts in full satisfaction, the surety may immediately maintain an action against the principal upon the implied agreement of reimbursement which arises out of the transaction. Whatever the surety gives to the creditor discharges the liability of the principal and is acceptable by the creditor as a payment, it becomes in law a payment by the surety of the principal's debt as between the principal and the surety and a cause of action in favor of the surety against the principal upon the implied promise of reimbursement immediately arises. Boulware v. Robinson, 8 Texas, 327; Faires v. Cockrell, 88 Texas, 428; Neale v. Newland, 4 Ark., 506, 38 Am. Dec., 43; Am. & Eng. Enc. of Law, vol. 27, pp. 471 and 349, and vol. 7, p. 349; Miller v. Howry, 24 Am. Dec., 322; Cornwall v. Gould, 21 Mass., 444; Hardin v. Branner, 25 Iowa, 364; Brandt on Suretyship and Guaranty, vol. 1, p. 321.

MR. JUSTICE YANTIS delivered the opinion of the court.

Several questions are presented in the petition for writ of error, but it is only necessary for us to consider the one involving the statute of limitation, it appearing from the evidence, without material contradiction, that the cause of action alleged by the plaintiff in error is barred by the two year statute of limitation. Plaintiff in error sued F. A. Chapa personally, and as independent executor of the estate of Antonio P. Rivas, deceased, and the other children and heirs of said Antonio P. Rivas, alleging he was a surety for Rivas on several notes, which were afterwards merged into one note, and made payable to A. B. Frank, which last note was signed by himself alone, and was executed and delivered by him to A. B. Frank, in lieu of Antonio Rivas' said other notes, on the 18th day of February, 1904. This note was paid by plaintiff in error in August or September, 1907. He sues to have reimbursement in the sum of three thousand three hundred and eighty-nine dollars and

sixty-seven cents, which was the principal of said note, and also to recover the interest which he had paid thereon. In his said suit he also sought to have rescinded a deed from A. P. Rivas, deceased, to his wife, Maria Q. Rivas, now deceased, dated April 16, 1888, conveying to her lot No. 4, block No. —, city block No. 150, corner Laredo and Houston Streets, in the city of San Antonio, and to subject said property to the payment of said debt, on the ground, alleged, that said lot was his separate property, and that he conveyed it to his said wife as his agent, and it was to be held by her for his own use and benefit. If the debt on which suit was brought herein by the plaintiff in error is barred by limitation, as we think the evidence shows as a matter of law, it follows that it will be unnecessary to decide the several questions raised as to the ownership and disposition of said lot.

The original suit was filed on June 1, 1908. The note sued on was made February 18, 1904. The suit was filed more than four years after the payment of Rivas' debt to Frank, if the execution and delivery of said note by Yndo to Frank is to be considered a payment of Rivas' debt. The said note by Yndo was actually paid by Yndo to Frank in August or September, 1907. If the latter date should be considered the date of payment of Rivas' debt, then limitation began to run on said date, and the debt would not be barred. If the date Yndo executed and delivered said note which took up all of Rivas' notes should be considered the day of payment, then limitation began to run on said date, and had run for more than four years before any suit was filed, and in such case his suit for reimbursement would be barred whether the two year or four year statute applied, though we hold that the two year statute would have application, since in such circumstances the suit is on an implied contract for Rivas to refund the money which Yndo had paid for him, and is not upon the note or any written obligation. Faires v. Cockerell, 88 Texas, 437, 28 L. R. A., 528, 31 S. W., 190; Willis & Bro. v. Chowning, 90 Texas, 622, 59 Am. St., 842, 40 S. W., 395.

It is contended by the plaintiff in error that this execution of and delivery to Frank of the note sued on was not a payment or discharge of Rivas' debt to Frank, but that Yndo signed said note, though alone, as surety for Rivas; or that at least there was sufficient evidence to require the submission of the issue to the jury, and that the peremptory instruction which was given in favor of defendants in error should not have been given. But a careful investigation has convinced us that there is no evidence of probative force, if indeed there is any at all, tending to establish that Frank did not accept Yndo's note in full discharge of Rivas from any further liability. It appears that Rivas was willing to continue on the note, but that he had renewed several times, and that for some reason presumably satisfactory to himself Frank did not want Rivas on the note any longer, and declined to permit him to sign it, but took a note by Yndo, the surety on the previous notes, alone, and required him to give, which he did, a mortgage on real estate to secure the payment.

The honorable Court of Civil Appeals in its findings of fact quotes all the evidence in the record, so it certifies, tending to prove that Frank did not accept Yndo's new note in satisfaction of Rivas' liability on the obligations which he had owed to Frank. It is as follows:

"We present all the evidence introduced by plaintiff to avoid the plea of limitations. The first witness was Mr. Seelig Deutschman, an attorney, who stated: 'Mr. Rivas told Mr. Yndo, "I will never owe you a dollar as long as I have got a dollar, and if I die, after I am dead, my children will pay it, if I don't have time before, and this is an honor debt. I was administrator for these children and I used this money and I want to get you to do me the favor to let me pay the Flores judgment out of this and I will pay you," he says, "if you will let me pay, if you will allow me to pay with this money the Flores judgment, I will promise you that when I sell that corner out of the proceeds of that sale the money shall be paid to A. B. Frank, every dollar, or to you, or to you if you pay it for me." . . . The next matter we had up with Mr. Rivas was in connection with the beginning of the widening of Houston Street. . . . Mr. Rivas said if the street was widened the property would come into the market and bring a good price, and he said, "When the street is widened and the property sold, I intend to pay the debt to A. B. Frank and interest Mr. Yndo paid for him." . . . eighteen months, I guess, before he died, or maybe a little less. Why I wrote him a note one day to come to see me and try to arrange our matters in some shape. . . . He said he had gotten my letter, that he didn't think he cared to put the property in any shape where its record would be encumbered in any way, but that he was going to draw a will—a paper, in that paper provide what he intended to do, and intimated he wanted me to draw the paper, but gave me no positive instructions except he told me the way he wanted the paper drawn . . . and that in that will he would provide that the Yndo matter be settled, the Yndo-Frank matter be settled. . . . The people were close friends. . . . The old fellow a short time afterwards became paralyzed.' He was the attorney for Rivas to file the will for probate. The will did not provide for the payment of the debt. And F. A. Chapa qualified as the executor under said will on the 30th day of March, 1907.

"Again Mr. Deutschman said: 'Mr. Yndo asked Mr. Rivas to take care of at least a part of the Frank debt, and Mr. Rivas told him he could not possibly do it out of this money. A judgment had been obtained against him and was a debt of honor. Means used by him belonging to some minors and he must pay it "and want you to know that I am not going to beat you folks out of one single debt or one dollar's interest you pay out for me, and I will pay the Frank debt if you pay it. I will see you get the money back," and he said: "That corner is mine and whenever that corner property is sold I am going to pay you that money." I didn't file suit because the relations between Yndo and Rivas were closer than brothers born and raised together and Yndo

worshipped the ground Rivas walked on, and would have laid down—given him the last dime.'

"Mr. F. M. Giraud, City Engineer of San Antonio, stated: 'The Yndos and Rivas were great friends during their lifetime. The last time I saw Antonio P. Rivas he was very old, could hardly walk. I had a talk with Antonio P. Rivas with reference to Mr. Yndo and Mr. A. B. Frank. He asked me about Mr. Yndo, if he was well, said he, Rivas, expected to die soon and wanted to have a settlement with Mr. Yndo, that he owed him an amount and wanted to pay him before he died. And he had that house at the corner, he did not owe anybody and he had to pay him. He said if he died soon and didn't pay it, he was going to request the family to pay it.'

"Manuel Yndo, on cross-examination by appellee, said: 'The reason I did not file suit before Rivas's death was that I was depending upon his promises and when he died he left no arrangement for this, for the settlement of the matter. That is when I brought this suit.'

"Mr. Deutschman being recalled, among other things, stated: 'If there was any conflict in what I stated yesterday and the statement I have just made hereinabove about the verbal agreement, then the last statement is the correct version. Rivas promised to pay Yndo every dollar paid for him, to pay it out of the sale of that house. He did not state then when the house was going to be sold, but then afterwards he said when the house would be sold it would be paid. He didn't state what particular time he was going to sell the property. He said that was the only thing he had left that was unencumbered, had nothing but it, but he would pay it out.' "

From the foregoing statement of the facts most favorable to the plaintiff in error which can be found in the record we can not conclude that any proof was made in the case to support his contention that the note executed by Yndo in lieu of Rivas's previous obligations, was not in satisfaction and discharge of such original indebtedness. We think it was a payment thereof, as complete and perfect as if it had been made with money. It is conclusively so, since the payment was made with a negotiable note and not with non-negotiable paper, and since Frank, the creditor, refused to look further to Rivas for the debt; and, instead, required Yndo to give his own promissory note, and required its payment to be secured with a mortgage on real estate. This view is amply fortified with authorities. Boulware v. Robinson, 8 Texas, 327, 58 Am. Dec., 117; Faires v. Cockerell, 88 Texas, 428, 28 L. R. A., 528, 31 S. W., 191; Willis v. Chowning, 90 Texas, 617, 59 Am. St., 842, 40 S. W., 396; Neale v. Newland, 4 Ark., 506, 38 Am. Dec., 43.

To avoid the statute of limitation the plaintiff in error alleged by second amended petition, which was filed February 14, 1910, nearly sixteen years after the payment of Rivas' debt by Yndo, construing as we do the giving of his individual note, and a mortgage to secure it, to be a payment, that Rivas promised Yndo to pay the note to Frank, or to pay Yndo if he had paid the note, when he sold a certain corner lot,

which is the one described in plaintiff in error's petition; and that this was a contract extending the time of payment until the indefinite date of selling said lot. The only evidence which could be considered as bearing upon this is the evidence quoted aforesaid, and we can not find in it any agreement by Yndo consenting to such extension. There is no evidence that he agreed to so extend the time in which to reimburse him. The most he did was to allow Rivas to make such statement to him, when Yndo would request him to pay. This can not be held as a contract between them, but the delay in payment was a mere forbearance on the part of Yndo, and did not obligate him not to sue at any time he might desire to do so. There was no evidence of a contract of extension. The mere promise of Rivas to pay at such indefinite time did not constitute a contract. We accordingly overrule this contention, and hold the evidence was insufficient to require such issue to be submitted to the jury. As the cause of action sued on was barred by limitation the trial court did not err in giving a peremptory instruction in favor of the defendants in error regardless of the other questions involved. The judgment of the District Court and that of the honorable Court of Civil Appeals should be affirmed, and it is so ordered.

*Affirmed.*