GULF PRODUCTION CO. et al. v. CON-
TINENTAL OIL CO. et al.

No. 6641.

Supreme Court of Texas.

Feb. 25, 1942.

Rehearing Denied June 10, 1942.

Austin, and Claude McCaleb, of Houston, for Gulf Production Co.

Brachfield & Wolfe, of Henderson, McKinney & Berry, of Cooper, Ben H. Powell, of Austin, Hiner & Pannill, of Ft. Worth, and Wm. Pannill, of Houston, for Turner and wife.

Lloyd Price, of Ft. Worth, Phillips & Phillips, of Dallas, Burney Braly, G. R. Pate, and Phillips, Trammell, Chizum, Price & Estes, all of Ft. Worth, Eugene Lary, of Dallas, McEntire, James & Clower, of Tyler, G. B. Smedley, of Austin, T. S. Christopher, Clayton L. Orn, Joe Estes, and John A. Braly, all of Ft. Worth, W. H. Francis and Walace Hawkins, both of Dallas, Dan Moody, of Austin, W. L. Summers, of Urbana, Ill., Chizum, Estes & Ludlum and Phillips, Trammell, Estes, Edwards & Orn, all of Ft. Worth, and Chas. B. Wallace, Ralph B. Shank, and Sidney Latham, all of Dallas, for defendants in error.

Baker, Botts, Andrews & Wharton, of Houston, Charles B. Ellard and Bromberg, Leftwich, Carrington & Gowan, all of Dallas, A. H. Britain, of Wichita Falls, Will E. Orgain, of Beaumont, William Jarrel Smith, of Pampa, J. B. Dooley, of Amarillo, Crenshaw, Dupree & Milam, of Lubbock, Hughes, Hardeman & Wilson, of San Angelo, L. J. Wardlaw, of Ft. Worth, John E. Kilgore and Guy Rogers, both of Wichita Falls, John Perkins, of Midland, Adkins, Pipkin, Madden & Keffer and Morgan, Culton, Morgan & Britain, all of Amarillo, Katherine R. Fortenberry, of Beaumont, Dallas Ivey, of Center, Jesse J. Lee and Fred L. Williams, both of Houston, Ike D. White and H. Grady Chandler, both of Austin, John B. Atkinson, of Waco, Montague & Fannin, Sidney L. Samuels, and Mark McGee, all of Ft. Worth, R. Wayne Lawler, of Houston, Klapproth & Hamilton, of Midland, Robert T. Neill, on San Angelo, Carrigan, Hoffman & Carrigan, of Wichita Falls, McDonald Meachum, of Houston, Ballinger Mills, of Galveston, John B. McNamara, of Waco, Allan Shivers, of Port Arthur, and H. E. Jackson, of San Angelo, amici curiae.

Black, Graves & Stayton, C. L. Black and A. W. Walker, Jr., all of Austin, Williams, Neethe & Williams and F. A. Williams, all of Galveston, John E. Green, Jr., of Houston, Wm. L. Wise and Peveril O. Settle, both of Ft. Worth, H. L. Stone, of Pittsburg, Pa., C. L. Stone, of Henderson, R. L. Batts, of

SHARP, Justice.

This case is before us on motion for rehearing. The original opinion is reported in 132 S.W.2d 553. After a careful consideration of the motion and the many able briefs filed by counsel for the litigants as well as by amici curiae, we have reached the conclu-

sion to withdraw the original opinion and substitute the following:

The Continental Oil Company, the East Texas Refining Company, H. L. Hunt, and P. G. Lake filed this suit against G. G. Turner and wife, Sina A. Turner, and the Gulf Production Company, to recover the oil and gas leasehold estate in a certain tract of 311.72 acres of land, more or less, in Rusk County, Texas. Plaintiffs claimed title under an oil and gas lease from G. G. Turner and wife to C. M. Joiner, trustee, dated April 7, 1927. The Gulf Production Company claimed title under a lease executed by G. G. Turner and wife to J. W. Pevey, dated July 25, 1930. The case was brought in the form of an action in trespass to try title, but plaintiffs specially pleaded the Turner lease of April 7, 1927, and compliance with its terms, as the source of their title. The case was tried before a jury, and in response to findings of the jury the trial court entered judgment in favor of the plaintiffs. The Court of Civil Appeals affirmed that judgment. 61 S.W.2d 185. This court granted a writ of error.

Defendants in error claim under a lease executed April 7, 1927, by G. G. Turner and wife to C. M. Joiner, trustee, and filed for record April 15, 1927. On October 18, 1930, the Turners reacknowledged this lease before a different notary public. Gulf Production Company claims under a lease executed by Turner and wife to J. W. Pevey, dated July 25, 1930, and filed for record August 5, 1930. Which of the two leases is superior, is the question here presented for decision.

The jury found: (1) That G. G. Turner and wife prior to April 7, 1928, accepted from Dan Cameron syndicate interest certificates purporting to cover the 80-acre Joiner Discovery Oil Well tract, in satisfaction of the rentals payable to G. G. Turner and wife on the C. M. Joiner, trustee, lease for the three succeeding years commencing April 7, 1928; (2) that G. G. Turner and wife prior to August 2, 1930, the date of the purported J. W. Pevey lease, moved away from the land in controversy in this suit, with no intention of returning and occupying same as their homestead; (3) that the Continental Oil Company, the East Texas Refining Company, H. L. Hunt, and P. G. Lake, at the time of the purchase of the interest claimed by them in the property in controversy, did not know, and could not have known by the exercise of ordinary inquiry, of any defect in the title to the land.

G. G. Turner and wife executed to C. M. Joiner, trustee, an oil and gas lease on 311.72 acres of land, above described. It was in the usual form, and was to run for five years, and as long thereafter as oil or gas might be produced. This lease was acknowledged by Turner and his wife in statutory form, was dated April 7, 1927, and was filed for record. The lease involved here is an ordinary oil and gas lease, and is classed an "unless clause" lease. The "drilling clause" of the lease reads: "If no well be commenced on said land on or before the 7 day of April 1928 this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the First State Bank at Overton, Texas, or its successors, which shall continue as the depository, regardless of changes in the ownership of said land, the sum of Seventy Seven and 25/100 Dollars, which shall operate as rental and cover the privilege of deferring the commencement of a well for Six (6) months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred."

Plaintiffs in error contend that the foregoing clause of the lease was never complied with, and that the lease terminated by its own terms on April 7, 1928, long before Pevey, through whom the Gulf Company claims, obtained his lease from Turner and wife. Defendants in error allege in their pleadings that they claim under the Joiner lease, and that the delay rentals had been fully paid.

The testimony shows that Joiner, who was drilling an oil well in the vicinity of this land, was in hard financial straits, and that he was unable to pay the delay rentals on the lease in money; and he proposed that if the lessors would accept syndicate certificates in payment of the delay rentals, he could continue to drill the well. Defendants in error contend that Turner accepted, prior to April 7, 1928, the syndicate certificates as payment of the delay rentals, and the work continued on the well; and that the acceptance of such syndicate cer-

tificates continued the original terms of the lease. On the other hand, plaintiffs in error contend that the lease executed by Turner and wife to Joiner was on the Turners' homestead, and that Turner did not have the right to accept the syndicate certificates as payment, in lieu of the cash specified in the lease. The issue as to whether Turner and his wife accepted the syndicate certificates was raised; but that issue was decided against the Turners when the jury, in response to a special issue, answered that Turner and wife had accepted such syndicate certificates in payment of the delay rentals. Plaintiffs in error also contend that it should be held, as a matter of law, that Turner did not have the right to accept such syndicate certificates in payment of the delay rentals, and continue the lease in force, for the following reasons: (1) That it was an oral modification of the lease, and was in violation of the Statute of Frauds and the Statute of Conveyances; (2) that such transaction violated the homestead rights of Mrs. Turner; and (3) that the provisions of the "unless" clause providing that, in the absence of drilling operations, the lease would terminate unless $77.25 was paid by a certain time, constituted a limitation on the estate; and, therefore, unless $77.25 in money was paid, the lease terminated by its own terms.

■ The lessors had the right to accept or reject the syndicate certificates as payment of the delay rentals. If the delay rentals were not paid on or before April 7, 1928, as provided for in the lease, the lease terminated by its own terms. Prior to that date the lessors preferred that the lease should not terminate, and accepted the syndicate certificates in lieu of the money, as payment of the delay rentals. The original lease unquestionably satisfied the Statute of Frauds and the Statute of Conveyances (Articles 3995, 1288, and 1291, Vernon's Annotated Texas Civil Statutes), and we are here dealing with the method of payment. The lease itself provides a means by which it was to be extended. Where the rent is paid and the lease is extended, the lessee does not hold under a new or different contract, but holds under the original lease.

The following rules are well established:

■ (1) That the parties to a contract, grant, or option may lawfully change the medium of payment, and waive strict performance of the method of payment, without violating the Statute of Frauds. Jones v. Gibbs, 133 Tex. 627, 130 S.W.2d 265, 131 S.W.2d 957; Hill v. Brown, Tex.Civ.App., 225 S.W. 780; Id., Tex.Com.App., 237 S. W. 252; Mitchell v. Simms, Tex.Com.App., 63 S.W.2d 371; Khourie Bros. v. Jonakin, 222 Ky. 277, 300 S.W. 612; 16 R.C.L., p. 885 § 389.

■ (2) That a creditor and a debtor may make and accept satisfactory payment of a debt otherwise than in money. As between a debtor and a creditor, anything may be agreed upon as satisfaction; and whatever is accepted by the creditor in satisfaction is effective as payment, and discharges the debt. Robson v. Watts' Heirs, 11 Tex. 764; Tinsley v. Ryon, 9 Tex. 405; Yndo v. Rivas, 107 Tex. 408, 180 S.W. 96; Wright v. Donaubauer, 137 Tex. 473, 154 S.W.2d 637; 1 Williston on Contracts (Rev.Ed., 1936), p. 423, § 121; Mills-Willingham, Law of Oil & Gas, p. 142.

■ (3) That the strict performance of a contract which is required to be in writing may be waived, or its terms extended, by oral agreement. Presidio Mining Co. v. Bullis, 68 Tex. 581, 4 S.W. 860; Bullis v. Noyes, 75 Tex. 540, 12 S.W. 397; Watkins v. Arnold, Tex.Civ.App., 60 S.W. 2d 476, writ refused; Ley v. Patton, Tex. Civ.App., 81 S.W.2d 1087, writ dismissed; Dockery v. Thorne, Tex.Civ.App., 135 S. W. 593, writ refused; Lewis Bros. v. Pendleton, Tex.Civ.App., 227 S.W. 502, writ dismissed; Jones v. Gibbs, 133 Tex. 627, 130 S.W.2d 265, 131 S.W.2d 957.

■ In Restatement of the Law of Contracts, Section 224, the general rule is announced as follows: "The performance of a condition qualifying a promise in a contract within the Statute may be excused by an oral agreement or permission of the promisor that the condition need not be performed, if the agreement or permission is given while performance of the condition is possible, and in reliance on the agreement or permission, while it is unrevoked, the promisee materially changes his position."

See, also, State v. Tyler County State Bank, Tex.Com.App., 277 S.W. 625, 42 A.L.R. 1347; Greenwood v. Senter, Tex. Civ.App., 44 S.W.2d 504.

■ The Turners had the right to accept the syndicate certificates, if they saw fit to do so. They exercised that right

by accepting such certificates in payment of the delay rentals. And this occurred on or before the date stipulated for the payment of such delay rentals. The jury found that Turner and wife accepted syndicate certificates in payment of the delay rentals prior to April 7, 1928. Consequently, the precise question for determination here is: Did the acceptance of the certificates by the Turners satisfy the payment of the delay rentals and continue in force the terms of the lease? We think that the great weight of authority supports the conclusion that it did; and we so hold.

■ The husband has the right to collect, receive, and dispose of the proceeds of the homestead, whether the proceeds arise from a lease of the homestead or from damages or insurance paid on account of destruction or injury to the homestead. This right rests on the ground that the proceeds of a sale or lease of the homestead are mere personal property, both before and after they are received by the husband. Whiteselle v. Jones, Tex.Civ. App., 39 S.W. 405; Alvord Nat. Bank v. Ferguson, 59 Tex.Civ.App. 113, 126 S.W. 622, writ refused; Johnson v. Hall, Tex. Civ.App., 163 S.W. 399; Williams v. Corpus Christi Bank & Trust Co., Tex.Civ. App., 104 S.W.2d 56, writ refused.

We are not here concerned with the question as to whether a husband alone may change or extend a lease or lien on the homestead, without the joinder of his wife. Here the husband and wife joined in the creation of the lease. That lease was never changed nor extended. It simply continued in force as originally executed by them. The only question is their right to accept payment of the rentals in a form different from that provided for in the lease. The jury found that the husband and wife both joined in accepting the substitute payment. This occurred before the lease had lapsed on account of the failure to pay rentals. We think they had a right to accept payment of the rentals in the form they did, and that the lease previously executed by them continued in force without the necessity of a re-execution thereof by the husband and wife.

The jury found that G. G. Turner and wife accepted the syndicate interest certificates in satisfaction of the rentals, and we cannot hold, as a matter of law, that such transaction violated the homestead rights of Mrs. Turner.

The plaintiffs in error contend that the lease from Turner and wife to Joiner, trustee, being at least in part on the homestead of Turner and wife, was to that extent void, because G. P. Birdwell, the notary before whom the acknowledgments were taken, had a beneficial interest in the right so granted by the lease, thus disqualifying him to act as notary in taking the acknowledgments. The alleged interest of Birdwell arose in this manner: On March 29, 1927, before the Turners executed their lease to Joiner, trustee, the said Joiner conveyed to W. D. Tucker a one-fourth interest in all leases then owned in Rusk County and a one-fourth interest in all leases thereafter to be "taken in the name of C. M. Joiner, Trustee, in Rusk County." This instrument was acknowledged before one G. P. Birdwell, but was not recorded until August 19, 1930. On March 30, 1927, also prior to the time of any conveyance from the Turners to Joiner, the said W. D. Tucker sold and conveyed one-half of his one-fourth interest in the leases owned and to be acquired by Joiner, as trustee, to Sam Warren, in trust for several men, including one G. P. Birdwell. The instrument showed on its face that G. P. Birdwell was one of the beneficiaries therein. This instrument was acknowledged before one G. P. Birdwell and was attached to the instrument of date March 29, 1927, above described, and recorded August 19, 1930.

All of the conveyances through which G. P. Birdwell acquired an interest in the leases were executed prior to the time Joiner acquired the lease here in question, and were recorded after the Turners had executed the lease to Joiner, but before Joiner had executed the leases to the defendants in error. While the lease from Turner and wife to Joiner, trustee, was acknowledged before one G. P. Birdwell, as were the prior conveyances of Joiner to Tucker, and of Tucker to Warren, trustee for the benefit of one G. P. Birdwell, there is no evidence or finding by the jury that the G. P. Birdwell who took the acknowledgments of Turner and wife to the lease to Joiner, trustee, was the same person as the G. P. Birdwell who acquired a beneficial interest in the lease through the prior conveyances from Joiner to Tucker, and from Tucker to Warren, as trustee for the benefit of Birdwell.

In this connection, it should be noted that the conveyances from Joiner to Tucker, and

from Tucker to Warren, as trustee for the benefit of Birdwell, are not here presented to show an outstanding superior title in Birdwell. They are being here presented merely for the purpose of showing that Birdwell was disqualified to act as notary in taking the acknowledgments of Turner and wife to the lease to Joiner, as trustee; thereby *defeating* the title deraigned through the Joiner lease.

■ There is in some instances a presumption of identity of person arising from identity of name; but this presumption is usually indulged in support of the regularity of land titles. It is never indulged in when its effect would be to negative the *regularity* and soundness of such a title. 30 Tex.Jur. p. 600, § 14, states the rule as follows: "The presumption of identity of person that arises from identity of name is not one of universal application. It grew out of the general presumption in support of the integrity of records and the regularity of land titles, and it ceases to become operative whenever its effect would be to negative them."

See, also, Waller v. Edmonds, 47 Tex. 468; Kelly v. Consolidated Underwriters, Tex.Civ.App., 300 S.W. 981, 984; Corey v. Moore, 86 Va. 721, 11 S.E. 114; Jones on Evidence (2d Ed.1926), p. 607, § 355; Buckeye Refining Co. v. Kelly, 163 Cal. 8, 124 P. 536, Ann.Cas.1913E, 840; Bryan v. Kales, 3 Ariz. 423, 31 P. 517, affirmed 162 U.S. 411, 16 S.Ct. 802, 40 L.Ed. 1020; Stevenson v. Murray, 87 Ala. 442, 6 So. 301; Dorente v. Sullivan, 7 Cal. 279; Dow v. Seely, 29 Ill. 495; Liddon v. Hodnett, 22 Fla. 442, 443; Prescott v. Tufts, 7 Mass. 209; Ellsworth v. Moore, 5 Iowa 486; Davis v. State, 16 Ala.App. 149, 75 So. 825; Howard v. Lock, Ky., 22 S.W. 332; and see annotation, Ann.Cas.1917E, 121.

■ Since there was no proof, nor finding by the jury, nor request for such finding, that the G. P. Birdwell who took the acknowledgments of Turner and wife to the lease to Joiner, trustee, was the same G. P. Birdwell who had previously acquired a beneficial interest in all leases to be thereafter acquired by Joiner; and since we cannot indulge in such presumption, there is nothing to support the contention that the notary who took the acknowledgments to the lease from Turner and wife to Joiner, trustee, was in anywise disqualified. Nor is it shown that any fraud was practiced or any undue influence

was brought to bear on either Turner or his wife in taking their acknowledgments to the lease given to Joiner. Since Turner and his wife actually signed the lease and appeared before a notary public and acknowledged same, and since the lease and the notary's certificate were regular on their face, and in no way disclosed the interest of the notary therein, the instrument would be valid to subsequent purchasers without notice of the defect. Waltee v. Weaver, 57 Tex. 569; Peterson & Fowler v. Lowry, 48 Tex. 408; Pool v. E. H. Chase & Co., 46 Tex. 207; Sanger v. Calloway, Tex.Com.App., 61 S.W.2d 988; Adkins-Polk Co. v. Rhodes, Tex.Com. App., 24 S.W.2d 351; Wells v. Laird, Tex. Civ.App., 57 S.W.2d 395, writ refused; Southwestern Mfg. Co. v. Hughes, 24 Tex. Civ.App. 637, 60 S.W. 684, writ refused; Gore v. Citizens State Bank, Tex.Civ.App., 88 S.W.2d 721, writ refused; Jones v. Equitable Bldg. & Loan Ass'n, Tex.Civ. App., 45 S.W.2d 438, writ refused; Loden v. Carothers, Tex.Civ.App., 85 S.W.2d 291; 1 Tex.Jur., p. 596, § 194; 23 Tex. Jur. p. 272, § 236.

But even if there had been evidence that the G. P. Birdwell who took the acknowledgments of Turner and wife to the lease from them to Joiner, as trustee, was the same person as the G. P. Birdwell who acquired a beneficial interest in the lease through the prior conveyances from Joiner to Tucker, and from Tucker to Warren, as trustee for Birdwell, the result would be the same; because the defendants in error were not charged with notice thereof. The jury found that the defendants in error had no actual notice of any defect in the title to the lease, and the evidence is sufficient to support that finding. If there was any notice at all of Birdwell's disqualification to take the acknowledgments, it was the constructive notice arising from the recording of the conveyances through which Birdwell acquired his interest. It appears, however, if we were to indulge in the presumption of identity of person arising from the mere identity of name, that Birdwell acted as notary in taking the acknowledgment in the conveyance from Tucker to Warren, as trustee for Birdwell. In other words, the very instrument through which G. P. Birdwell acquired his interest in the lease showed on its face that the same G. P. Birdwell was both notary and grantee. He took the acknowledgment to the conveyance of the

lease to himself. If we were to indulge in the presumption that the G. P. Birdwell who took the acknowledgment to the conveyance was the same person named as the beneficiary in the conveyance, then we would have to hold that he was disqualified to take the acknowledgment to such conveyance. The defect in the instrument under which Birdwell acquired his interest in the lease would be apparent on the face of the instrument, and such instrument would not be subject to recordation. 1 Tex.Jur. p. 424, § 15; 36 Tex.Jur. p. 439, § 31; Whitehead v. Foley, 28 Tex. 268; McDaniel v. Needham, 61 Tex. 269; Birdseye v. Rogers, Tex.Civ.App., 26 S. W. 841; Christy v. Romero, Tex.Civ.App., 140 S.W. 516, writ refused; Salmon v. Huff, 80 Tex. 133, 15 S.W. 257; Coffey v. Hendricks, 66 Tex. 676, 2 S W. 47; Holliday v. Cromwell, 26 Tex. 188. If the instrument was not subject to recordation, subsequent purchasers were not required to take notice thereof, even though same was actually recorded in the deed records. 1 Tex.Jur. p. 424, § 15; 36 Tex. Jur. p. 487, § 57; King v. Russell, 40 Tex. 124, 125; Taylor v. Harrison, 47 Tex. 454, 26 Am.Rep. 304; Hayden v. Moffat, 74 Tex. 647, 12 S.W. 820, 15 Am. St.Rep. 866; Peters v. Clements, 46 Tex. 114; Farmers Mut. Royalty Syndicate v. Isaacks, Tex.Civ.App., 138 S.W.2d 228. We therefore hold that there was no such proof of a defect in the acknowledgments in the lease from Turner and wife to Joiner as to render the same invalid.

Now the question presents itself whether the word "Trustee" inserted in the Joiner lease was sufficient to impose upon a purchaser under such lease the duty of inquiring and ascertaining who were the beneficiaries in such lease. There is nothing in the Joiner lease which in any manner indicated that Birdwell had an interest therein.

■ Prior to 1925 the rule prevailed in this State that subsequent purchasers of property which had been conveyed to a trustee were legally bound to ascertain who were the beneficiaries in the trust conveyance. This placed quite a burden upon those who acquired property from a trustee. In 1925 the Legislature changed that rule by adopting Article 7425a, Vernon's Annotated Texas Civil Statutes, which reads as follows: "Where a trust is created, but is not contained or declared in the conveyance to the trustee, or when a

conveyance or transfer is made to a trustee without disclosing the names of the beneficiary, or beneficiaries, the trustee shall be held to have the power to convey or transfer or encumber the title and whenever he shall execute and deliver a conveyance or transfer or encumbrance of such property, as trustee, such conveyance or transfer or encumbrance shall not thereafter be questioned by any one claiming as a beneficiary under such trust or by any one claiming by, through, or under an undisclosed beneficiary, provided that none of the trust property in the hands of said trustee shall be liable for personal obligations of said trustee."

Under the plain provisions of the above statute, where the conveyance was from Turner and wife to Joiner, as trustee, without disclosing for whose benefit Joiner held as trustee, the defendants in error could purchase from Joiner, as trustee, without being charged with constructive notice of Birdwell's interest, if any, in the property.

■ The fact that the original lease from Turner and wife to Joiner, as trustee, was afterwards reacknowledged before a different notary, after Pevey had taken a lease on the same property, in our judgment was not an admission that the original lease was void; and such act would not be a waiver of any rights acquired under the lease as originally acknowledged, nor estop Joiner and his vendees from asserting such rights. At most, it might raise an issue to go to the jury; but the jury, in finding that the defendants in error had no notice of any defect in the title, resolved that issue in favor of said defendants in error.

The defendants in error further contend that, since whatever title Birdwell had in the lease emanated out of Joiner prior to the time Joiner acquired an interest therein, they, as purchasers through Joiner, were not required to take notice of the conveyances through which Birdwell acquired an interest in the lease. They cite in support of their contentions the following authorities: Breen v. Morehead, 104 Tex. 254, 136 S.W. 1047, Ann.Cas.1914A, 1285; Pomeroy's Equity Jurisprudence, vol. 2, p. 1133, § 658; Copelin v. Shuler, Tex.Sup., 6 S.W. 668; Anderson v. Farmer, Tex.Civ.App., 189 S. W. 508, writ refused; 4 Tiffany, Real Property, (3d Ed. 1939), p. 653, § 1234; Patton on Titles (1938), § 45; 43 Tex.Jur. p. 652, § 384; 36 Tex.Jur. p. 481, § 52. We omit a discussion of this contention, because same is not necessary to a decision of the case.

This case was submitted to a jury, and their findings were made as above indicated, and the trial judge entered judgment thereon. Both the trial court and the Court of Civil Appeals found that there was sufficient evidence to support the judgment. This court will not set aside a judgment of the trial court, unless it can be said, as a matter of law, that there was no evidence of a probative nature to support such judgment. We have examined the statement of facts and the entire record, and have found evidence to support the judgment of the trial court. Therefore this court is not justified in holding to the contrary. Merrell et ux. v. Dorothy Hume Timmons et vir., Tex.Sup., 158 S.W.2d 278; Beer v. Landman, 88 Tex. 450, 31 S.W. 805; 11 Tex.Jur., p. 871, § 113.

We shall not discuss the question as to whether or not the Turners abandoned their homestead. In view of the conclusions reached herein, that question becomes immaterial.

The motion for rehearing of defendants in error is granted, and the former judgment of this court is set aside. The judgments of the trial court and of the Court of Civil Appeals are affirmed.

CRITZ, J., dissenting.

SMEDLEY, J., not sitting.

CRITZ, Justice (dissenting).

I most respectfully dissent from the opinion of the majority in this cause. In my opinion, the opinion written by our late Chief Justice C. M. Cureton, and reported in 132 S.W.2d 553, correctly disposes of this case. No good purpose would be served by my writing further.

On Motion for Rehearing.

Rehearing denied.

CRITZ, Justice (dissenting).

When judgment was entered in this case granting the motion for rehearing filed herein by the Continental Oil Company et al., I dissented from the opinion written by Associate Justice SHARP, with the statement: "In my opinion, the opinion written by our late Chief Justice C. M. Cureton, and reported in 132 S.W.2d 553, correctly disposes of this case. No good purpose would be served by my writing further." In view of the far-reaching effect of the rulings contained in the majority opinion on rehearing, I feel that I should make a statement of my views on the issues which I think should control the decision of this case.

As shown by the original opinion by Chief Justice Cureton, and the opinion of the majority of this Court on rehearing by Associate Justice SHARP, Continental Oil Company et al. assert title in this cause under an oil and gas lease, dated April 7, 1927, from G. G. Turner and wife, Sina A. Turner, to C. M. Joiner covering a tract of 311.72 acres of land in Rusk County, Texas. The above lease is in the usual form of an "unless" oil and gas lease. It will be noted that it contains, among others, the following provisions:

It states that it leases the land above mentioned:

(1) "for the sole and only purpose of mining and operating for oil and gas or of laying pipe lines and building tanks, stations and structures thereon to produce, save and take care of said production."

(2) It provides that said lease "shall remain in full force for a term of five years from its date, and as long thereafter as oil or gas, or either of them, is produced from said land by lessee."

(3) It provides: "If no well be commenced on said land on or before the 7th day of April, 1928, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the First State Bank at Overton, Texas, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of Seventy-seven and 25/100 ($77.25) Dollars, which shall operate as a rental and confer the privilege of deferring the commencement of a well for six (6) months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively."

It is shown that the homestead of Turner and wife was a part of this 311.72-acre tract; that neither Joiner nor any of his assigns have ever drilled a well for oil or gas on this land, or erected any improvements thereon; that the sums of money required by the terms of this lease to be paid, to keep it in force after April 7, 1928, were never paid; that Joiner proposed to G. C. Turner that he take "syndicate interest certificates" in lieu of the payments in money for the three succeeding years commencing April 7, 1928, called for in the lease con-

tract; that Turner agreed to this; and that such certificates were delivered to Turner; but no written memorandum of change in the lease contract was signed by Turner and wife, or either of them. Finally, it is shown that Turner and wife, accepted the above-mentioned "syndicate interest certificates" in payment of the delay rentals provided for in the lease contract.

It will be noted that the above lease contract provides that it shall remain in force for a term of five years from its date, and as long thereafter as oil or gas, or either of them, is produced in paying quantities. It is then provided that if no well be commenced on the land covered by the lease on or before April 7, 1928, the lease shall terminate as to both parties, "unless" the lessee shall pay or tender to the lessor or to the lessor's credit in a certain named bank the sum of $77.25, which shall operate as a rental and confer the privilege of deferring the commencement of a well six months from said date. In like manner and upon like payments or tenders, the commencement of a well could be further deferred for like periods for the same number of months successively until the end of the five-year primary period.

It is settled by the decisions of this court that the above instrument, while called a mineral or oil and gas lease, is, in law, a conveyance of an estate in land. Its effect is to sever the mineral estate from the surface estate, and convey the mineral estate to the lessee named in the contract. It is also settled by the decisions of this court that, while an instrument of this kind is, in law, a conveyance of an estate in land, the "unless" clause operates to limit the estate conveyed. The opinion of the majority does not question, but fully recognizes the above-stated construction of this instrument, and of others of like character and import.

I think it is also settled as the law of this State that the "unless" provisions in a lease of this kind are not only limitations on the grant or estate conveyed, but that the events contained or named in such provisions mark the duration of the estate granted. The estate granted either continues to exist for its primary term, in this instance five years, or it terminates before the primary term is ended according to the happening or not happening of the event or events of the "unless" provisions made a limitation upon the grant.

Under the "unless" provisions of this and like leases the lessee is under no obligation to either drill a well or pay rentals. He simply has the option of permitting the lease or estate granted to terminate and cease to exist, or he can keep such lease or estate alive and in effect by either drilling or paying rentals, as specified in its "unless" provisions.

When duly executed, a contract such as this expresses the agreement of the parties and definitely and completely fixes, determines, and defines the very character of the estate granted, and the method by which it will endure for the primary period, or terminate at a prior date. In my opinion, since the "unless" provisions of this contract are limitations upon the very grant itself, fix the very character of the estate granted, and mark its duration, they constitute, in fact and in law, a part of the very essence of the title created in the first instance. This being true, it is my opinion that permitting a change of such provisions to be effected in parol is to violate not only the letter, but the very object and intent of our statutes of conveyances and of frauds. Articles 1288, 1291, 3995, R.C.S.1925.

To my mind it is just as logical to say that the times named for the drilling of a well, or the payment of delay rentals, provided by the "unless" provisions of this lease contract, can be shortened or extended in parol, as it would be to say that the thing itself, provided to be done, can be so changed to something else. In fact, it appears to me that if the thing itself provided to be done can be changed to something else by a mere parol agreement, then the thing itself can be absolutely abolished in the same way, and nothing substituted in its place. I mention these matters to show the far-reaching consequences of the opinion of the majority on the rights of both lessors and lessees.

Chief Justice Cureton's opinion fully discusses the nature and effect of the "unless" clause in this instrument. Such opinion also points out that under our statutes an estate conveyed is deemed the grant of a fee-simple title if a less estate be not limited by express words, or does not appear to have been granted. No one would argue that the limitation upon the estate here granted could have rested originally in parol. If not, I think that Chief Justice Cureton's opinion fully demonstrates that such limitation cannot be altered, changed, or abolished in parol.

Finally, I think Chief Justice Cureton's opinion correctly announces the law which ought to govern this case in so far as such

opinion deals with the powers to change the "unless" provisions of this written contract by subsequent parol agreement. I also think that Chief Justice Cureton's opinion correctly announces the law governing this case in so far as it deals with the power of Turner and wife to alter or change the "unless" provisions of this lease contract as to the land covered thereby which constituted their homestead, except by written instrument duly executed by both Turner and wife, and separately acknowledged by the wife.